EDMUND W. TURNLEY, JR., et ux.

*v.*

ALVIN GARFINKEL et al.

362 S.W.2d 921

(*Nashville,* December Term, 1961.)

Opinion filed December 7, 1962.

WILLIAM J. HARBISON, TRABUE, MINICK, STURDIVANT & HARBISON, for complainants.

CHARLES L. CORNELIUS, Nashville, for defendants.

MR. JUSTICE FELTS, delivered the opinion of the Court.

This was a suit for a declaratory judgment. Complainants, owners of a lot in a residential subdivision, divided it into two lots and contracted to sell one of them

to defendants Garfinkel and wife, who propose to build a dwelling on it. To this, defendants Talbot and wife, owners of another lot in the subdivision, objected that it would violate the restrictive covenants protecting all the lots. Complainants sought a decree to determine the controversy.

To the bill the Talbots filed a demurrer, which was overruled, and the case was heard upon the bill, the answers of defendants, and a stipulation of the facts. The Chancellor decreed in favor of complainants, and the Talbots appealed and insist that the Chancellor erred in holding that the re-subdivision of complainants' lot into two lots and the erection of another dwelling on one of them (the other already having a dwelling on it) would not violate any of the restrictive covenants.

These lots are part of West Meade Farms, Inc., Subdivision, Section II, a plan of which was approved by the Davidson County Planning Commission, and was recorded in the Register's office March 14, 1949; and on March 16, 1949, the West Meade Farms, Inc., recorded a set of restrictive covenants, which were referred to and made part of the deeds conveying each of these lots. A photographic copy of this plan or plat (Ex. 1 to stip.) and of these covenants (Ex. 1 to O.B.) are sent up as part of the record.

These covenants consist of 11 numbered paragraphs, and provide they are to be deemed covenants running with the land and to continue in force until December 31, 1985. There are restrictions governing setback lines, the cost and type of buildings that may be erected, limiting the property to residential use, and other restrictions not here pertinent. But there is no express restriction as to

the size, frontage, minimum area of any lot, or against the right of an owner of a lot to re-subdivide it.

On the face of the recorded plat, however, there is a re-subdivision of the lots. This is in what is called the "owner's certificate" which the developer (West Meade Farms, Inc.) was required to sign as a condition to the Planning Commission's approval of the plan and the recording of it. This certificate, which the developer signed and which appeared as a part of the recorded plat, is as follows:

"We hereby certify that we are the owners and adopt the plan of subdivision of the property as shown hereon and dedicate all public ways and easements as noted. No lot or lots as shown hereon shall again be subdivided, resubdivided, altered or changed so as to produce less area than hereby established until a system of sewers is installed and made accessible to such lot or lots or otherwise approved by the Davidson County Planning Commission and the Health Officers, and under no condition shall such lot or lots be subdivided, re-subdivided, altered or changed so as to produce less area than prescribed by the covenant restriction running with the title to the property."

It will be seen from this plat that this subdivision consisted of a narrow strip of land running roughly east and west, about 6,000 feet in length and varying in width from about 380 feet to 560 feet. This plat shows the numbers and dimensions of the lots, the setback lines, streets, roads, etc. The lots were laid out, beginning at the western end of the strip, and numbered consecutively from

1 through 18, Lot 1 being at the west end, and Lot 18 at the east end of this strip.

Each of the lots, as laid out, fronted on the south side of Jocelyn Hollow Road, and ran back or south the whole width of the strip, and each varied in size, Lot 1 containing about 4 acres, Lots 2, 3 and 4 about 2½ acres each, Lot 5 about 28 acres, Lot 6 about 2½ acres, and Lots 7 through 18 ranging from about 1⅓ to 2½ acres each. Complainants' was Lot 1, and defendants Talbots' was Lot 6. Thus, between Lot 1 and Lot 6 lie Lots 2, 3, 4 and 5.

Lot 5 was excepted from these restrictive covenants, and was later re-subdivided into 9 lots and 2 streets, as part of another subdivision, the Harding Park Subdivision, a copy of the plan of this later subdivision being sent up (Ex. 5 to stip.). These nine lots front on the south side of Jocelyn Hollow Road, run back or south approximately 305 feet, and each varies in area from about 1.3 acres to a little less than one acre.

So, between complainants' lot (No. 1) and defendants' lot (No. 6) there are three lots (Nos. 2, 3 and 4) of this subdivision (West Meade Farms, Inc., Section II) containing about 2¾ acres each, and nine lots of the other subdivision (resulting from re-subdivision of Lot 5), each of these nine ranging in area from about 1.3 acres to a little less than one acre.

Complainants' lot (No. 1) was a corner lot located on the southwest corner of Jocelyn Hollow Road and West Meade Drive, fronting 215 feet on the south side of Jocelyn Hollow Road, and fronting 564 feet on the west side of West Meade Drive. Complainants' residence on

this lot was built on the south half of it, facing West Meade Drive, so that it was feasible for them to divide the lot into two lots of about 2 acres each.

They asked the Planning Commission and the health authorities to approve a plan for dividing this lot into two lots of about the same size, designating the north half (fronting on Jocelyn Hollow Road) as Lot A and the south half (fronting on West Meade Drive) as Lot B. The Commission and health authorities approved this plan October 28, 1960, and it was recorded. Thereafter, complainants contracted to convey Lot A to the Garfinkels, who plan to build a dwelling on it.

█ It is common practice for developers of high-class residential subdivisions to provide restrictions to protect the beauty of the neighborhood and the value of the property for residential use. Such restrictions are usually regarded as covenants running with the land, binding on anyone who purchases with notice of them, and enforceable by the owner of any of the lots so protected. *Ridley v. Haiman*, 164 Tenn. 239, 47 S.W.2d 750; *Laughlin v. Wagner*, 146 Tenn. 647, 244 S. W. 475.

█ Such restrictive covenants, of course, like other contracts, will be enforced according to the clearly expressed intention of the parties; but being in derogation of the right of unrestricted use of property, will be strictly construed, and will not be extended by implication to anything not clearly and expressly prohibited by their plain terms. *Lowe v. Wilson*, 194 Tenn. 267, 269-270, 250 S. W. 2d 366; *Emory v. Sweat*, 9 Tenn. App. 167, 176; *Southern Advertising Co. v. Sherman*, 43 Tenn. App. 323, 326, 327, 308 S. W. 2d 491.

▮ ▮ Since the covenants in this case contain no express restriction against a re-subdivision of any of the lots, they cannot be extended by implication to prevent complainants' re-subdivision of their lot. Nor can such restriction be implied from the conveyance of these lots with reference to this recorded plat showing the dimensions of the lots.

▮ While we have no decision upon this particular point, we think it is generally well settled on principle and authority, which we deem sound and are content to follow, that such a conveyance of the lots by reference to a recorded plat raises no implied covenant that the lots shall remain as shown on the map, or that they may not later be subdivided.

Some of the cases so holding are these: *Herold v. Columbia Investment & Real Estate Co.*, 72 N.J., Eq. 857, 67 A. 607, 14 L.R.A., N.S., 1067; *Utujian v. Boldt*, 242 Mich. 331, 218 N. W. 692, 57 A.L.R. 761; cases collected in the Annotation, 57 A.L.R. 764; *Levin v. Mountain Farms, Inc.*, 22 Conn. Sup. 14, 158 A. 2d 493, 495; 14 Am. Jur., Covenants, etc., sec. 201, p 613.

▮ Appellants further contend that even if complainants' lot may be divided into two lots, no house can be built or maintained on the north half of the lot, there being already a house on the south half of it. For this contention, they invoke paragraphs 3 and 11 of the restrictive covenants, which are as follows:

"3. Not more than one dwelling shall be built on any lot and maintained thereon at any one time.

\* \* \* \* \*

"11. Any one of the restrictions imposed in this instrument may at any time or times be amended by a recorded instrument in writing signed and acknowledged by West Meade Farms, Inc. and the owner or owners of record of at least 70% of the acreage of the entire tract shown on the recorded plan. Additional restrictions may be placed on said property in the same manner."

As to paragraph 11, we cannot see how it can affect this controversy. That paragraph, in itself, does not impose any restriction on any of the lots in the subdivision. It merely provides a method by which the restrictions imposed by the other paragraphs may be amended, or additional restrictions may be imposed.

The controversy is over the meaning, the interpretation, and the application to be given to paragraph 3, "Not more than one dwelling shall be built on any lot and maintained thereon at any one time."

For appellants, it is urged that this restriction means that not more than one dwelling can be built on "any lot" in the subdivision, not on "any lot" in a re-subdivision of a lot; and that, therefore, no additional house may be built on the other half of complainants' lot, as proposed by the Garfinkels, there already being one house on the other part of the lot.

We think this restriction, "Not more than one dwelling shall be built on any lot and maintained thereon at any one time," when read with the provision for subdivision on the face of the recorded map, as it must be, refers either to "any lot" in the subdivision, or to "any lot" in a re-subdivision of a lot, as the case may be; and that

where, as here, such lot has been properly re-subdivided, the restriction refers to the subdivided lot and merely prevents more than one house from being built or maintained on either of the subdivided lots.

The argument is made for appellants that the developer of this subdivision and the developer of the Harding Park Subdivision had a general scheme or plan for making all the lots of both subdivisions fronting on Jocelyn Hollow Road into a high-class residential area, with large lots of a uniform size, and that the restrictive covenants should be construed and applied to accomplish that scheme.

It is true that this area is a high-class residential section, but there was no neighborhood scheme for having the lots of uniform size. As we have seen, complainants' lot (No. 1) contained about 4 acres, while defendants' lot (No. 6) and the other lots ranged in area from $2\frac{1}{2}$ to less than one acre each. So, each of the two subdivided lots (parts of Lot 1) will contain only little less than defendants' lot and more than many of the other lots in the neighborhood.

For these reasons, all of the assignments of error are overruled, the decree of the Chancellor is affirmed, and the costs are adjudged against appellants and the surety on their appeal bond.