COUSINS PROPERTIES OF TENNES-
SEE, INC., Appellee,

v.

Maurice KARR, etc., Appellant.

Court of Appeals of Tennessee,
Western Section.

Feb. 28, 1975.

Certiorari Denied by Supreme Court
Aug. 11, 1975.

Gordon & Malone, Nashville, for appellant.

Robert P. Thomas, Boult, Cummings, Conners & Berry, Nashville, for appellee.

NEARN, Judge.

Cousins Properties of Tennessee brought suit against Maurice Karr for the recovery of sewer tap fees. Karr, a builder, had tapped onto plaintiff's sewer line and refused to pay plaintiff for its use. There was no contract between plaintiff and defendant and plaintiff's suit was based solely on the theory of unjust enrichment. The Chancellor found for the plaintiff and awarded plaintiff the sum of $200 for each tap made by Karr. The defendant has appealed.

The facts are relatively undisputed.

Plaintiff, formerly known as Larchwood, Inc., purchased an 800 acre tract of land for development, which area it designated as Hickory Bend Subdivision. As part of the development plan, plaintiff constructed a sewer treatment plant and mains connecting thereto at a cost in excess of $300,000. Plaintiff then contracted with a subsidiary corporation, Hickory Bend Development Company to operate and maintain the entire system.

On February 9, 1962, plaintiff had recorded certain restrictive covenants on Hickory Bend Subdivision. The recorded restrictive covenants were attached to and made a part of the complaint.

Among other things, these 1962 restrictions recited that plaintiff had constructed a sewerage disposal system and had entered into a contract with Hickory Bend to operate and maintain the system and also to provide for collection and disposition of garbage and waste from the subdivision. The restrictions also provide that all dwellings are to be connected to the sanitary sewerage system and all connections must be approved by a representative of Hickory Bend.

The restrictions do not specifically mention any tap fee or charge therefor.

Later plaintiff sold Section IV of said subdivision to a now bankrupt corporation known as Waterfalls Developers, Inc. Waterfalls then contracted with plaintiff for a sewer tap fee of $200 per lot for each tap when made. This contract was unrecorded.

On September 25, 1968, Waterfalls executed certain restrictive covenants applicable to the land purchased. This instrument was recorded in Book 4175, page 34 of the Register's Office of Davidson County and was attached to and made a part of the complaint.

These additional restrictive covenants were placed of record solely by Waterfalls and were not executed by plaintiff nor its subsidiary Hickory Bend. To a large extent

the additional covenants are repetitious of those placed of record by plaintiff. However, the instrument also provides:

> "Waterfalls Developers, Inc. has constructed sewer lines and tapped onto a sewerage disposal system built and owned by Larchwood, Inc. _ _ _."

The instrument also provides that there shall be a reasonable monthly service charge to each lot owner to be paid to Hickory Bend for furnishing sewerage disposal services.

On September 19, 1969, Karr purchased from Waterfalls 30 lots in Section IV of the subdivision with no mention of any tap fee by Waterfalls.

Waterfalls never made any sewer taps or paid plaintiff any tap fees.

The defendant Karr has tapped 27 lots onto plaintiff's sewer system over plaintiff's protest and has refused to pay.

The defendant testified that when he purchased the lots from Waterfalls, it was his understanding that the sewer tap fees were "thrown in" with the deal and that there was nothing of record to advise him otherwise.

■■■ The appellant has not filed Assignments of Error as required by Rule 12 of this Court. The lawsuit was heard by the Chancellor on oral testimony, without a jury, and we are more lenient in the enforcement of Rule 12 in that situation than on an appeal from a jury trial. This difference in approach is justified by reason of T.C.A. § 27–303, which provides that on appeals of this nature the review is de novo upon the record in the Trial Court, with a presumption of the correctness of the Trial Court's finding unless the evidence preponderates to the contrary. We also note the appellant has by brief and argument clearly placed before this Court those areas wherein he claims the Chancellor erred. We therefore conclude, under the record as presented, a refusal to review the action of the Trial Court would be extremely harsh, if not unjust.

■■■ No exhibit introduced and identified at the oral hearing is authenticated by the Chancellor. Admittedly, the exhibits introduced at the oral hearing had been previously filed in the lawsuit as exhibits to the complaint, or as exhibits to an affidavit previously filed by the defendant in response to a show cause order why he should not be enjoined from making additional taps onto the sewer system pending this litigation. We further note, however, that neither the affidavit of the defendant, nor the exhibits thereto, are authenticated by the Chancellor. We conclude this Court cannot consider the affidavit of the defendant nor the exhibits attached thereto, neither can we consider the exhibits which depend solely upon their having been introduced at the oral hearing, because of the lack of authentication by the Chancellor. We hold those documents which are made exhibits to the complaint are a part of the technical record in this lawsuit, Rule 10.03, and may be considered by this Court.

■■■ The defendant-appellant insists he is a bona fide purchaser for value of the 30 lots; he had no actual knowledge of the $200 per lot tap fee, and that fee is not mentioned or referred to in any recorded instrument which would place the defendant on constructive notice. The defendant argues he is not to be held liable on a contract between the plaintiff and Waterfalls of which he had no knowledge, from which he gained no benefit, and of which he had no reason to inquire.

The plaintiff insists the defendant is being unjustly enriched by using the plaintiff's property, the sewerage system, without making the proper payment for the right to so use. The plaintiff argues the defendant is an experienced builder and should have known a tap fee was required, or at least should have informed himself concerning that possibility.

The proof of the defendant admits that tap fees are customarily charged to someone. However, it is argued that since it

was his understanding with Waterfalls that they had been paid or would not now be charged, he does not owe plaintiff a tap fee. Further, it was plaintiff's obligation to place some instrument of record to show that tap fees would be owed to plaintiff as all he thought he had to pay was the monthly service charge mentioned in the Waterfalls restrictions.

We cannot agree with this position.

■ Arguendo, if we assume that Waterfalls misled defendant to induce him to purchase the 30 lots, such fact would not render plaintiff answerable for Waterfalls' misconduct. Waterfalls is not the agent of plaintiff but simply a vendee of plaintiff and the record reveals no connection between the two other than vendor-vendee. We need cite no authority for the proposition that the misstatement or fraud of a subsequent vendee does not bind a previous vendor.

■ Further, we think it unnecessary to cite any authority for the proposition that the owner of property does not have to place anything of record stating he is not giving his property away or suffer a presumption that he has given it away.

After reading the subdivision restrictions placed of record by the plaintiff we are unable to find anything therein which would, in our mind, constitute a giving away of sewer taps by the plaintiff. And it is not argued that they do; or that reliance was made by the defendant to any supposed gift or waiver contained therein. Appellant complains of the restrictions placed of record by Waterfalls.

The prime argument for reversal is that the defendant had no knowledge of the tap fee contract between plaintiff and Waterfalls; that such was not a matter of public record and the Chancellor should not have bound the defendant to the Waterfalls contract.

■ The Chancellor did not bind the defendant to the Waterfalls contract. The suit was for unjust enrichment and not to enforce a contract. After hearing all the proof the Chancellor came to the conclusion that a tap fee of $200 was reasonable and was the reasonable amount of which plaintiff had been deprived and the defendant had been unjustly enriched by the use of the system.

■ Had the contract been recorded it would not have applied to defendant for he was not a party to it. Had he contacted plaintiff about a tap fee the parties would have been free to negotiate the tap fee. Neither was bound to the other by the Waterfalls contract.

We therefore conclude that the evidence does not preponderate against the finding of the Chancellor and his decree is affirmed at the cost of appellant and surety.

Honorable Roy A. Miles, by designation of the Supreme Court of Tennessee, took part in the hearing of this appeal in the absence of Presiding Judge C. S. Carney.

MILES, Special Judge, concurs.

MATHERNE, Judge (dissenting).

The opinion of the majority rests upon the fact the defendant Karr did not pay the plaintiff for the right to tap 27 lots in Section IV, Hickory Bend Subdivision, onto the plaintiff's sewerage disposal system. With that fact established, the majority holds the defendant was thereby unjustly enriched at the expense of the plaintiff, and affirms a judgment against the defendant.

This dissent is based upon the propositions the doctrine of unjust enrichment, under the facts, is not available to the plaintiff; and, under the facts, the equities of the defendant outweigh the equities of the plaintiff.

At the expense of making this dissent longer than might otherwise be necessary, it is important that facts be stated in more detail so that the equities of the parties may be more accurately weighed.

It appears the plaintiff, then known as Larchwood, Inc., owned several hundred acres of land which it proposed to develop into a residential area to be known as Hickory Bend Subdivision. The plaintiff constructed a sewerage disposal system to serve the entire area. On February 9, 1962, the plaintiff recorded restrictive covenants for the entire area which contains the following requirements insofar as the plaintiff's sewerage system is concerned:

"13. SEWAGE DISPOSAL. All dwellings shall be connected to the sanitary sewerage system provided by the developer. All sewer connections must be approved by a representative of the company operating said sewage disposal system.

\*    \*    \*    \*    \*    \*

"17. SEWERAGE SERVICE CHARGES. In addition to the foregoing restrictive covenants, the following provisions are specifically declared to be applicable to each and every parcel of land in Hickory Bend Subdivision and are further declared to be covenants running with the land and shall be binding on every subsequent purchaser or holder of land therein except as hereafter provided:

"Larchwood, Inc. has constructed a sewage disposal system to service said subdivision and has entered into a contract with Hickory Bend Development Company to operate and maintain said system and also to provide for the collection and disposition of garbage and waste from said subdivision.

"NOW, THEREFORE, To secure the payment of funds necessary to operate and maintain said sewage disposal system and to furnish said services for the mutual benefit of those owning or holding land in said subdivision, all purchasers thereof agree for themselves, their heirs, executors, successors and assigns that each lot or parcel of land in said subdivision which they acquire or in which they have an interest is hereby impressed with a lien to Hickory Bend Development Company for said sewage charges and charges for the collection and disposition of waste. Such lien shall be accumulative and shall continue in full force and effect irrespective of any Statute of Limitations for the institution of suit until all such charges are paid in full and shall continue and be binding upon any subsequent purchaser of property and be enforceful in any court of law or equity, and any unpaid balance shall bear interest at the rate of 6% per annum from the date due."

By regular conveyance Waterfalls Developers, Inc., now a bankrupt, purchased Section IV of the subdivision, which area included approximately 60 lots. Waterfalls entered other restrictive covenants applicable to Section IV, which did not purport to change the foregoing restrictions, but which did contain the following explanatory paragraph added to (17) *Sewer Service Charge*:

"Waterfalls Developers, Inc. has constructed sewer lines and tapped onto a sewerage disposal system built and owned by Larchwood, Inc. to serve said subdivision . . . ."

Waterfalls entered into a contract with the plaintiff that it would pay to the plaintiff $200 for each lot in Section IV which it connected to the plaintiff's sewerage system. That contract was not recorded.

By warranty deeds dated March 12, 1969 and September 19, 1969, Waterfalls sold 30 lots in Section IV to the defendant Karr. There was no mention of a tap fee in either deed. The deeds were made subject to the restrictions placed on Section IV by Waterfalls. Of course, the deeds were also subject to the prior restrictions recorded by the plaintiff, even though no mention thereof was made.

The defendant began to build on the lots, and in September or October, 1969, the management company knew the defendant had connected one or more lots to the sewerage system. At that time the representative of the management company told the defendant a tap fee was owing on each lot.

The defendant denied he owed a tap fee, refused to pay, and continued to construct houses and connect them to the sewerage system. The defendant, or the parties to whom he sold the houses paid the monthly service charge on each lot as same became due.

Finally, on May 2, 1973, at which time the defendant had connected 27 of the 30 lots to the sewerage system, the plaintiff filed this lawsuit seeking an injunction from further taps onto the sewerage system, and asking $200 per lot for the 27 lots connected to the system, on the theory the defendant was to that extent unjustly enriched at the expense of the plaintiff.

The plaintiff gave no explanation for this unreasonable delay of three and one-half years before bringing its lawsuit. The president of the plaintiff testified he could not say the defendant had actual knowledge of a tap fee on the lots. This witness further stated the tap fee was entirely different from the monthly service charge, and had the defendant gone to the management company and obtained permission to tap, he would have learned of the $200 tap fee. The later insistence is of little value in a determination of this lawsuit, because the management company came to the defendant and informed him of the tap fee as soon as the defendant connected a lot onto the system. There is no insistence the taps by the defendant were improperly made, and the "approval" requirement as stated in the plaintiff's restrictions is not at all determinative of this lawsuit. The plaintiff's president further testified that as a custom in the trade tap fees are normally paid, but he admitted in some instances the tap fee might be included in the purchase price of a lot.

Plaintiff's counsel stipulated in open court there was no instrument of record of any nature which placed a tap fee on any lot in Hickory Bend Subdivision. The defendant's counsel accepted that stipulation.

The defendant Karr testified there were no side agreements between him and Waterfalls relative to a tap fee. He testified the matter of payment for sewer taps vary with the particular deal or sale. Sometimes the sewer tap fee is free, sometimes a charge is made, and at times the amount is negotiated. The defendant stated his understanding of his contract with Waterfalls was that the water and sewer tap fees were included in the purchase price of the 30 lots. The defendant stated he had no knowledge of the contract between the plaintiff and Waterfalls concerning a $200 per lot tap fee. No representative of Waterfalls testified.

The defendant's testimony is uncontradicted insofar as his deal with Waterfalls is concerned. That testimony is reasonable under the circumstances and is supported by the other acts of the defendant; there are no circumstances shown which are inconsistent with that testimony. Under this record where the defendant's testimony stands uncontradicted, and he stands unimpeached, the testimony should be given full weight. See and compare: *Bank of Hendersonville v. Dozier* (1940) 24 Tenn.App. 178, 142 S.W.2d 191; *Ray Carter, Inc. v. Edwards* (1969) 222 Tenn. 465, 436 S.W.2d 864.

The argument that a $200 tap fee has been paid on all other lots connected to the sewerage system merely begs the question. We do not know the contracts and circumstances under which those tap fees were charged and collected.

A recent opinion on unjust enrichment is *Paschall's, Inc. v. Dozier* (1966) 219 Tenn. 45, 407 S.W.2d 150, wherein the Court held a furnisher of materials and labor for improvements to a house, under a contract with one other than the owner of the house, could sue the owner under the doctrine of unjust enrichment, *the owner not having paid the value of the improvement to another*, even though the time for filing a materialmen's lien had expired.

In *Paschall's, Inc.* the Court stated each lawsuit based upon the doctrine of unjust enrichment must be decided upon: (1) a

benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the benefit, and (3) acceptance of that benefit under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of the value thereof to the plaintiff.

It is not every enrichment that will justify a lawsuit based upon the doctrine of unjust enrichment. To justify the action the enrichment must be "unjust." *Paschall's, Inc.,* supra; 17 C.J.S. Contracts § 6, pp. 572–573. The right to recover does not arise from consent as in the case of a contract, but from the law of natural equity. *First National Bank v. Matlock* (1924) 99 Okl. 150, 226 P. 328.

In considering the equity in each party, the defendant must be held responsible for all matters of which he had constructive notice. The recorded restrictions ·by the plaintiff, and by Waterfalls, make no mention of a sewer tap fee. Generally, restrictive covenants will be strictly construed, and will not be extended by implication to anything not clearly and expressly prohibited or required by the plain terms of the restriction. *Turnley v. Garfinkel* (1962) 211 Tenn. 125, 362 S.W.2d 921; *Shea v. Sargent* (Tenn.1973) 499 S.W.2d 871. There is certainly no requirement of a tap fee in the restrictions as herein quoted. If the language be deemed ambiguous on that point, which it is not, the recording of the restrictions is not constructive notice of the requirement of a tap fee; and absent actual knowledge a vendee takes free of that requirement. *Maxwell v. Land Developers, Inc.* (Tenn.App.1972) 485 S.W.2d 869.

Again, considering the equities of the parties, we note the plaintiff had three opportunities to give notice to the world of its claim of a tap fee: (1) the claim could have been included in the recorded restrictions on the entire subdivision; (2) the claim could have been included in the recorded deed of sale of Section IV of the subdivision; (3) the contract with Waterfalls for a $200 tap fee could have been recorded.

The plaintiff was not required by law to do any of these things. And, the plaintiff chose to not give notice to the world of its claim to a tap fee. The plaintiff sold Section IV of the subdivision under such circumstances as left Waterfalls free to deal with the public in such manner as could, under the plaintiff's claim of unjust enrichment, result in considerable damage to any innocent purchaser of a lot from Waterfalls; that is what happened to the defendant. There is no natural equity here, except in the defendant. The policy of the law is against upholding secret liens, encumbrances and charges to the injury of innocent subsequent purchasers and encumbrancers. T.C.A. §§ 64–2601, 2602, 2603.

A weighing of equities should also result in a denial of the plaintiff's recovery where, as here, the plaintiff has given a third party (Waterfalls) the apparent authority to pass the enrichment on to another, and the defendant in his dealings with the third party, without knowledge, has relied upon the enrichment to his detriment. See and compare: *Hibbs v. Alexandria First Nat'l. Bank* (1922) 133 Va. 94, 112 S.E. 669. Here, the defendant has parted with his payment for the 30 lots based upon the inclusion of the tap fee in the purchase price.

The foregoing, coupled with the long delay by the plaintiff in bringing its lawsuit, could easily have resulted in denying the defendant the opportunity to recoup from the parties to whom the 27 lots were sold, all or a part of the amount owing the plaintiff, if any. This unexplained and unwarranted delay in bringing suit must weigh against the equity in the plaintiff.

Finally, in weighing the equities, it should be noted the course of action followed by the plaintiff in its dealings with Waterfalls, coupled with this present demand against the defendant based upon the doctrine of unjust enrichment, sets the stage for quite a bit of chicanery between the plaintiff and Waterfalls. To say the . least, the wrongful act of Waterfalls in not

advising the defendant of the contract requiring a $200 tap fee [which act was admitted to be wrong by the president of the plaintiff] was the result of the acts of the plaintiff in dealing with Waterfalls, coupled with the plaintiff's failure to record its claim for a tap fee.

Chancellor Gibson dealt with this type situation as follows: "Where one of two persons must suffer loss (plaintiff or defendant) by the acts or fraud of a third party (Waterfalls), he who enabled that third party to occasion the loss, or to commit the fraud, ought to be the sufferer." (Parentheses added) The reason given for the rule "consists in the fact that the equity of the one, whose act caused the loss, is less than the equity of the other party." Gibson's Suits in Chancery, 5th Ed., Vol. I, § 61, p. 75; see also, *Tennessee Hospital Service Assn. v. Strang* (1961) 49 Tenn.App. 263, 354 S.W.2d 488.

Considering the acts and the failure to act of both parties, this Court should hold the equity in the plaintiff is far less than the equity in the defendant, and the acts of the plaintiff enabled the third party Waterfalls to commit the wrong.

Under the record the plaintiff has no standing to assert the doctrine of unjust enrichment against the defendant. The elements of unjust enrichment as set out in *Paschall's, Inc.* are not present in this lawsuit.

The decree of the Chancellor should be reversed, and this lawsuit dismissed at the cost of the plaintiff.