# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 26, 2010 Session

## BILL TRAVIS, ET AL.
### v.
## TRUSTEES OF LAKEWOOD PARK
### v.
## COFFEE COUNTY, TENNESSEE

**Appeal from the Chancery Court for Coffee County**
**No. 04-238      Charles Lee, Judge, by designation**

---

**No. M2009-01935-COA-R3-CV - Filed September 3, 2010**

---

This appeal concerns sovereign immunity. A subdivision in the defendant county had restrictive covenants that, *inter alia*, required the payment of an annual assessment by all lot owners to the subdivision trustees. In the wake of delinquent taxes, pursuant to statutes, the county took title to lots in the subdivision after delinquent tax sales failed to yield sufficient bids. The county held the lots for several years, and declined to pay the trustees the annual assessments on the properties. Residents of the subdivision sued the trustees, and cross-claims against the county were asserted for the past-due assessments. The county contended that it was immune from liability for the lot assessments under the doctrine of sovereign immunity. After a trial, the trial court held that the county was entitled to sovereign immunity insofar as it had complied with the pertinent statutes on delinquent tax sales, and granted a partial judgment against the county on the assessment claims. The trustees appeal, arguing that the county was not entitled to assert sovereign immunity as a defense to the contract claims under the restrictive covenants. We agree, and affirm in part and reverse in part the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Mark A. Nobles, Murfreesboro, Tennessee, for the Plaintiff/Appellants, Trustees of Lakewood Park

Robert L. Huskey, Manchester, Tennessee, for the Defendant/Appellee, Coffee County, Tennessee

## OPINION

### FACTS AND PROCEDURAL HISTORY

National Development Company, Inc., owned a large tract of land in rural Coffee County, Tennessee ("the County"). The land was developed into the Lakewood Park subdivision, consisting of roughly 3800 lots. About 2600 were unimproved camping lots and the remaining 1200 were residential lots allowing permanent dwellings.

In November 1983, National Development created a trust indenture for the benefit of all present and future Lakewood Park lot owners, and filed the trust indenture with the County's Register of Deeds. The trust indenture contained various restrictive covenants and authorized the Lakewood Park Trustees ("Trustees") to enforce the restrictions. To fund the Trustees' operations, the trust indenture provided for an annual assessment of eighty-five dollars per lot.[1] In the event that an assessment was not paid, the trust indenture granted a lien on the property and authorized the Trustees to "institute proceedings to foreclose" the lien.[2]

As National Development continued developing Lakewood Park, over time, sales of the lots slowed, and the value of the property declined. Eventually, National Development went into bankruptcy before the subdivision was completed.

For various reasons, the owners of numerous lots in the Lakewood Park subdivision had failed to pay their property taxes. Pursuant to Tennessee Code Annotated § 67-5-2401 *et seq.*, the County asserted liens and initiated sales of these lots to collect the delinquent taxes. When the lot sales failed to generate bids sufficient to pay the taxes due, the County purchased the properties in accordance with Tennessee Code Annotated § 67-5-2501 *et seq.*

---

[1]The original trust indenture provided for a regular assessment of fifty dollars per lot plus a special assessment of twenty-five dollars per lot. In August 1996, the regular assessment was increased to sixty dollars per lot, by amendment to the trust indenture.

[2]This provision of the trust indenture was later amended to provide that the Trustees could collect "[a]ny expenses of collection, including but not limited to collection agency, attorney's fee, court cost, and private process fees, . . . in addition to the past due assessments, regular or special, plus interest."

In this manner, the County took title to twenty Lakewood Park lots in 1993 and sixty-nine lots in 2001; the lots taken by the County were scattered throughout the subdivision. However, the County did not pay annual assessments to the Trustees on any of the lots to which it took title.

In June 2004, Bill Travis and seventy-one other residents of Lakewood Park ("the residents") filed a petition in the Coffee County Chancery Court to remove the Trustees from their positions. As grounds, the residents alleged that the Trustees had breached their fiduciary duty to the residents by allowing "a general decline in all areas and aspects" of the subdivision.[3] In response, the Trustees generally denied the allegation. The Trustees asserted, *inter alia,* that their efforts to fulfill their obligations to the residents were hampered by their inability to collect annual assessments from all lot owners. Consequently, the Trustees asserted a counterclaim against the residents for $21,058 in unpaid assessments.

The residents responded to the Trustees' counterclaim with a denial that they were in arrears on the annual assessments. By an agreed order, the residents amended their petition to add the County as a respondent. In the amended petition, the residents alleged that the County owed $219,620 in unpaid assessments for the lots that the County had acquired in the delinquent tax sales. The Trustees later amended their responsive pleading to assert a cross-claim against the County for the unpaid annual assessments on the County-owned lots.

In response to the contentions of the residents and Trustees, the County admitted that it had not paid any annual assessments for the Lakewood Park lots that it owned. The County denied liability for the assessments on the basis that the doctrine of sovereign immunity was a defense to the terms of the trust indenture. In the alternative, the County contended that the applicable statute of limitations limited any recovery.

Discovery ensued. At some point, the residents and the Trustees settled the dispute between them. The residents and the Trustees then united to pursue collection of the assessments allegedly due from the County.

In August 2008, the County held a special auction and sold all of the Lakewood Park lots that it owned. Most of the lots sold for the minimum bid amount of fifty dollars, although some were sold for more.

---

[3]In particular, the residents asserted that the Trustees had allowed dilapidated structures to be built on camping lots, permitted some lot owners to use their yards as trash dumps, failed to regulate the subdivision's sewage disposal system, let the roads become riddled with potholes, and neglected to maintain the recreational facilities and common areas.

In the late fall of 2008, the parties filed cross-motions for summary judgment. After a hearing, the trial court concluded that the County was immune from suit under the doctrine of sovereign immunity insofar as it carried out the functions mandated under Tennessee statutes. Because Tennessee Code Annotated § 67-5-2507[4] required the County to act "as expeditiously and advantageously as possible" to sell the lots, the trial court determined that the County was immune from liability insofar as the County had acted in such a manner. Accordingly, the cross-motions for summary judgment were granted in part and denied in part, reserving for trial the determination of the extent to which the County had acted in accordance with Section 67-5-2507.

In July 2009, the trial court conducted a bench trial. Nine witnesses testified, including past and present Lakewood Park Trustees, past and present County mayors, and the County's delinquent tax attorney. Eight exhibits were entered into evidence, including a copy of the trust indenture and a calculation of the assessments allegedly due. The Trustees' testimony generally concerned the County's lack of communication with the Trustees during the period of time in which the County owned the lots, and the County's alleged lack of effort to sell the lots. The testimony of the County officials described their efforts to sell the lots. At the conclusion of the testimony, the trial court took the matter under advisement.

In August 2009, the trial court issued a memorandum opinion and order, awarding judgment to the Trustees. In the order, the trial court found that the County had not acted expeditiously and advantageously, as required by statute, from 1993 to 2003 with respect to the lots acquired in 1993. Regarding the lots the County acquired in 2001, the trial court found that the County's efforts met the statutory requirements. The parties had previously agreed that the statute of limitations barred any award against the County for assessments incurred prior to 1999. Consequently, the trial court awarded the Trustees a judgment against the County

---

[4]Tennessee Code Annotated § 67-5-2507 provides:

> (a)(1) It is the duty of the county mayor of each county to take charge of all the lands bought in by the county at such delinquent tax sales.
>
> (2) During the period when redemption of any such tract of land can be made, the land shall be held and put only to such use as will not result in a waste of such land.
>
> (3) After the period of redemption has elapsed, it shall be the duty of the county mayor to arrange to sell every tract of such land as expeditiously and advantageously as possible.

T.C.A. § 67-5-2507 (2006).

in the amount of $8698 for assessments incurred from 1999 through 2002. The Trustees now
appeal.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Trustees contend that the trial court erred by holding that the County was
immune under the doctrine of sovereign immunity to any degree, as to any of the annual
assessments and penalties for the time in which the County owned the subject lots.

On cross-appeal, the County argues that the restrictive covenants of the Lakewood Park
subdivision do not provide a right of action by the Trustees against an owner of a lot with
whom the Trustees have no privity of contract for collection of various assessments. The
County contends instead that the restrictive covenants merely grant the Trustees a lien against
the lots in question to secure those assessments. The County also argues that the trial court
erred in denying in part its motion for summary judgment. In addition, the County appears
to challenge the trial court's factual findings as to whether the County acted "as expeditiously
and advantageously as possible."[5]

Since this case was tried by the trial court sitting without a jury, we review the trial court's
findings of fact *de novo* with a presumption of correctness unless the evidence preponderates
otherwise. TENN. R. APP. P. 13(d). The trial court's conclusions of law are reviewed *de
novo*, affording them no presumption of correctness. ***Nashville Ford Tractor, Inc. v. Great
Am. Ins. Co.***, 194 S.W.3d 415, 425 (Tenn. Ct. App. 2005). "[T]he construction of restrictive
covenants, like any other written contract, is a question of law." ***Barnett v. Behringer***, No.
M1999-01421-COA-R3-CV, 2003 WL 21212671, at *3 (Tenn. Ct. App. May 27, 2003), *no
perm. app.* (citing ***New Covenant Baptist Church v. Sark***, No. E2000-02930-COA-R3-CV,
2002 WL 313155, at *1 (Tenn. Ct. App. Feb. 28, 2002), *perm. app. denied* June 24, 2002;
***Maples Homeowners Ass'n, Inc. v. T & R Nashville Ltd. P'ship***, 993 S.W.2d 36, 38-39
(Tenn. Ct. App.1998)).

## ANALYSIS

We note at the outset that the County argues that the trial court erred in declining to grant its
motion for summary judgment against the Trustees, and by proceeding instead to conduct a
trial. It is well-settled that "this Court is precluded from entertaining, as alleged error, the
trial court's denial of a summary judgment motion (predicated upon the existence of a
genuine issue of material fact) when the case proceeds to a trial on the merits and a judgment

---

[5]After acknowledging that the Trustees do not challenge the trial court's findings, the County then states that
the findings are "appropriate and certainly supported by the evidence."

is subsequently rendered." ***Cortez v. Alutech, Inc.***, 941 S.W.2d 891, 893 (Tenn. Ct. App. 1996). Thus, this issue is not appealable and we decline to address it.

The Trustees argue on appeal that the trial court erred in concluding that the County is protected to any degree by the doctrine of sovereign immunity. Citing ***Turnley v. Garfinkel***, 362 S.W.2d 921 (Tenn. 1962), the Trustees assert that, provided the purchaser took with notice of the covenants, restrictive covenants are contractual in nature and enforceable like any other contract. They contend that the County purchased the Lakewood Park lots with notice because the trust indenture was recorded with the County's Register of Deeds. The Trustees assert that Tennessee Code Annotated § 5-1-105 waives the County's defense of sovereign immunity on contractual claims, and argue that the trial court erred in failing to award the Trustees a judgment for all assessments incurred by the County, subject to the applicable statute of limitations.

In response, the County emphasizes that it acquired the lots solely by performing the governmental functions mandated under Tennessee statutes. The County contends that it never entered into a contract as such with the Trustees. Comparing the payment of lot assessments to "a tax upon the County by Lakewood Park," the County argues that, under the Tennessee Constitution, only the sovereign has the power to impose taxes. For these reasons, the County submits that the trial court's decision was correct. In the alternative, the County contends that restrictive covenants must be construed narrowly and asserts that the trust indenture limits the Trustees' remedy to a lien on the lots formerly owned by the County.

Restrictive covenants are commonly adopted for the purpose of protecting the beauty and value of a residential neighborhood. ***Turnley***, 362 S.W.2d at 923. They are covenants that run with the land; restrictive covenants bind anyone who purchases with notice of them, and may be enforced by the owner of any of the lots protected by them. ***Id.*** (citing ***Ridley v. Haiman***, 47 S.W.2d 750 (Tenn. 1932); ***Laughlin v. Wagner***, 244 S.W. 475 (Tenn. 1922)). Restrictive covenants are contractual in nature and "will be enforced according to the clearly expressed intentions of the parties." ***Id.***

Restrictive covenants are in derogation of the right of unrestricted use and enjoyment of property; consequently, they are not favored in Tennessee. ***Id.*** (citing ***Lowe v. Wilson***, 250 S.W.2d 366 (Tenn. 1952); ***S. Adver. Co. v. Sherman***, 308 S.W.2d 491 (Tenn. Ct. App. 1957); ***Emory v. Sweat***, 9 Tenn. App. 167, 176 (1927)); ***Williams v. Fox***, 219 S.W.3d 319, 324 (Tenn. Ct. App. 2007) (citing ***Arthur v. Lake Tansi Vill., Inc.***, 590 S.W.2d 923, 927 (Tenn. 1979); ***Shea v. Sargent***, 499 S.W.2d 871, 873 (Tenn. 1973)). Restrictive covenants are strictly construed and "will not be extended by implication to anything not clearly and expressly prohibited by their plain terms." ***Turnley***, 362 S.W.2d at 923.

Here, it is undisputed that the County acquired title to the subject lots with notice of the trust indenture, and that the trust indenture requires lot owners to pay annual assessments to the Trustees. The County admits that it has not paid any assessments to the Trustees as provided in the trust indenture. As such, the County has plainly breached the terms of the trust indenture, and the issue is whether the County is immune from liability to any extent under the doctrine of sovereign immunity.

Under the doctrine of sovereign immunity, "the State cannot be sued in its own courts, unless the State expressly consents to suit by statutory enactment of the legislature." *Thomas & Assocs., Inc. v. Metro. Gov't of Nashville*, No. M2001-00757-COA-R3-CV, 2003 WL 21302974, at *4 (Tenn. Ct. App. June 6, 2003), *no perm. app.* (citing *Brewington v. Brewington*, 387 S.W.2d 777, 779 (Tenn. 1965); *Quinton v. Bd. of Claims*, 54 S.W.2d 953, 957 (Tenn. 1932)). Tennessee Code Annotated § 5-1-105 states that "[s]uits may be maintained against a county for any just claim, as against other corporations." T.C.A. § 5-1-105 (2005). As early as 1874, our Supreme Court held that counties were formed as corporations "to facilitate the execution of the powers delegated to [them] as . . . local legislature[s], and to enable [them] to make binding contracts, and to be liable to suit for just claims arising under such contracts." *Wood v. Tipton County*, 66 Tenn. 112, 1874 WL 4363, at *1 (1874). As recently as 2004, this Court has stated: "Its [a county's] liability to suit only extends to matters of contract and not to torts or the negligence of its employees." *Lucas v. State*, 141 S.W.3d 121, 126 (Tenn. Ct. App. 2004) (quoting *McAndrews v. Hamilton County*, 105 Tenn. 399, 403-04, 58 S.W. 483 (1900)) (discussing development of Tennessee counties' sovereign immunity).

The County concedes in its appellate brief that "[a]ction can be brought against the County for a contract." Nevertheless, the County argues that it is insulated from liability because it was performing a mandatory governmental function, as opposed to a proprietary function. This argument is without merit. The difference between governmental functions and proprietary functions has been considered in connection with tort claims against a governmental entity. *See, e.g.*, T.C.A. § 29-20-201 (2008 Supp.); *Crowe v. John W. Harton Mem'l Hosp.*, 579 S.W.2d 888, 890-92 (Tenn. Ct. App. 1979) (discussing the distinction between governmental function and proprietary functions in context of tort claims). Here, it is undisputed that the Trustees' claim against the County is a contract claim, and the distinction between governmental and proprietary function is irrelevant. Consequently, the County is not immune from liability for the annual lot assessments under the doctrine of sovereign immunity, to any degree.

In the alternative, the County contends that the trust indenture limits the Trustees' recovery to assertion and foreclosure of a lien on the subject lots. This argument is likewise without merit. Certainly, the trust instrument grants a lien for past-due assessments and provides that

"[t]he Trustee *may* institute proceedings to foreclose the liem [sic] imposed by the failure to pay assessments under this instrument in a court of competent jurisdiction." (emphasis added). However, the trust instrument in no way limits the Trustees to such a lien, as suggested by the use of the permissive "may." We find that the trust indenture cannot be read to limit the Trustees' remedy to lien foreclosure. *See Turnley*, 362 S.W.2d at 923 (citing *Lowe v. Wilson*, 250 S.W.2d 366 (Tenn. 1952); *S. Adver. Co. v. Sherman*, 308 S.W.2d 491 (Tenn. Ct. App. 1957); *Emory v. Sweat*, 9 Tenn. App. 167, 176 (1927)).

These holdings pretermit all other issues raised on appeal.

## CONCLUSION

Therefore, we must conclude that the trial court erred in declining to grant judgment against the County for all Lakewood Park lot assessments not precluded by the applicable statute of limitations. Accordingly, the award in favor of the Trustees for assessments on County-owned lots incurred from 1999 through 2002 is affirmed. The decision not to award an amount for assessments incurred from 2003 through the date on which the County sold each subject lot is reversed. The cause must be remanded for proceedings to determine the amount of the final award.

The decision of the trial court is affirmed in part and reversed in part, as set forth above, and the cause is remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed against the appellee, Coffee County, Tennessee, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE