Christine JONES, James R. Jones, Sallie Berger, Charles F. Berger, John W. Myers, Charles W. Winchester, Mary M. Hutcheson, B.F. Durham, Ben Hall, Gary Frederich, Bud Hines and J. Draper Doyal, Plaintiffs,

v.

W.L. ENGLUND and wife Susan H. Englund, Defendants.

Court of Appeals of Tennessee, Eastern Section.

Aug. 20, 1993.

Permission to Appeal Denied by Supreme Court Jan. 31, 1994.

Hoyt O. Samples, Samples & Jennings, Chattanoga, for appellants William L. Englund and Susan H. Englund.

Steven M. Jaccoway, Patrick, Beard, Richardson, Chattanooga, for appellees Sallie Berger, Charles F. Berger, John W. Myers, Charles Winchester, Mary M. Hutcheson, B.F. Durham, Ben Hall, Gary Frederich, Bud Hines, and J. Draper Doyal.

## OPINION

SANDERS, Presiding Judge, Eastern Section.

Both sides have appealed from a chancery decree which would permit the construction of one additional residence on a subdivision lot which was restricted to one single-family dwelling, but would not permit the construction of a third residence, although the original lot had been replatted into three lots.

The parties are owners of lots in the North Soddy Creek Cabin Site Area, a subdivision on the shores of Lake Chickamauga created by the Tennessee Valley Authority (TVA) in the late 1940's. All deeds to the lots in the subdivision contain language similar to the following: "For the benefit of all purchasers of lots in the North Soddy Creek Cabin Site Area Subdivision ... and in order to foster the development and protect the value of all said land for private residence purposes, [the Grantee] (1) will use the land herein conveyed, described as Lot 21, Tract XCR–109:21 of said subdivision, for private residence purposes only; ... (3) will not construct or maintain or cause or suffer to be constructed or maintained on Lot 21, ·Tract XCR–109:21 any building other than a single family dwelling costing not less than $750.00 ..."

In 1988, the Defendants, William and Susan Englund, purchased the original Lot 21 in its entirety by three separate deeds from the same owner. The property had been resubdivided into Lot 21, Lot 21–A and Lot 21–B by the former owner some 15 years earlier. Each of the deeds received by the Englunds contained the restrictions set out above. The largest parcel continues to be called Lot 21 and contains a residential dwelling where the Englunds currently make their home. Lots 21–A and 21–B are vacant. Shortly after the purchase, the Englunds decided to sell Lots 21–A and 21–B as homesites. They posted "for sale" signs and spent considerable sums of money on improvements, which included substantial grading of Lots 21–A and 21–B as well as the erection of a sea wall around all three of the lots to prevent erosion by the waters of the lake.

In April, 1991, a group of owners of lots in the subdivision sent a letter to Mr. Englund stating it had come to their attention he had lots for sale and sent him a copy of the restrictions on the lots which restricted them to one single-family residence per lot and, in effect, suggested he observe the restrictions. This request was, however, ignored by the Englunds. In September, 1992, the 12 Plaintiffs who were lot owners in the subdivision filed suit alleging the Defendants were attempting to sell Lot 21 in three separate lots. They alleged such a sale would be a violation of the restrictions of the subdivision and asked for a temporary restraining order against the Defendants. They asked that the Defendants be enjoined from selling the lots and enjoined from violating the restrictions.

The Defendants, for answer, denied they had violated the restrictions and denied there was any restriction against selling Lots 21–A or 21–B.

Upon the trial of the case, the court filed a memorandum opinion, the effect of which was to hold (1) The restrictions in the subdivision were enforceable; (2) The restrictions prohibited a resubdivision of the lots in the subdivision but, because the Plaintiffs had delayed filing suit, the Defendants had incurred expenses they otherwise would not have incurred and equity would be served if the Defendants were allowed to sell 21–A and 21–B as one lot. The court also held an additional residence could be built on Lots 21–A and 21–B if combined.

Both sides have appealed, saying the court was in error. We find the decree of the trial court must be modified as hereinafter stated.

■ We first consider the issues presented by Defendants Englunds. The Englunds, in their first issue, contend the chancellor erred in finding the language of the restrictive covenant would ordinarily prohibit the resubdivision of Lot 21. We agree.

The Englunds rely primarily on the holding in the case of *Turnley v. Garfinkel*, 211 Tenn. 125, 362 S.W.2d 921 (1962) to support their contention. In *Turnley*, the restrictive covenants contained the following language: "Not more than one dwelling shall be built on any lot and maintained thereon at any time." The *Turnley* court held, 362 S.W.2d at 923:

> Since the covenants in this case contain no express restriction against a resubdivision of any of the lots, they cannot be extended by implication to prevent complainants' resubdivision of their lot. Nor can such restriction be implied from the conveyance of these lots with reference to this recorded plat showing the dimensions of the lots.

Likewise, the covenants in the case at bar contain no express restriction against resubdivision. "Restrictive covenants being in derogation of the right of the unrestricted use of the property will be strictly construed." *Benton v. Bush*, 644 S.W.2d 690, 691 (Tenn.App.1982) (citing *Lowe v. Wilson*, 194 Tenn. 267, 250 S.W.2d 366 (1952); *Ownby v. Boring*, 38 Tenn.App. 540, 276 S.W.2d 757 (1954). We, accordingly, hold the resubdivision of Lot 21 into Lots 21, 21–A and 21–B was not, per se, a violation of the restrictive covenants.

The Englunds further rely on the case of *Turnley v. Garfinkel* to support their contention that they or their successors should be allowed to construct one dwelling on each of the resubdivided lots. We cannot agree with this interpretation of *Turnley* but find the case of *Benton v. Bush*, 644 S.W.2d 690 (Tenn.App.1983) to be controlling on this issue. As already noted above, the restrictive covenants in *Turnley* contained the following language: "Not more than one dwelling shall be built and maintained thereon at

any time." The restrictive covenants in *Benton v. Bush*, however, contained language almost identical to the restrictions in the case at bar, which was as follows: "For the benefit of all purchasers of lots in the Harrison Point Subdivision ... and in order to foster the development and protect the value of said land for private residence purposes, the Grantee (1) will use the land herein conveyed described as Lot 26, Tract XCR–11:26 of said subdivision for private residence only; ... (3) will not construct or maintain or cause or suffer to be constructed or maintained on Lot 26, Tract XCR–11:26, any building other than a single-family dwelling costing not less than $5,000.00." 644 S.W.2d at 691.

In affirming the lower court's injunctive order requiring the removal of a portion of a second dwelling which was under construction on a resubdivided lot, the court stated, at 692:

> We find the language of the restrictive covenant in this case to be vastly different from the language of the covenant in the *Turnley* case. The *Turnley* restrictive covenant applied to any lot rather than to a specific lot. In the instant case, the restriction refers to "Lot 26, Tract XCR–11:26". .... We believe the language in the restrictions in this case means one single-family dwelling on Lot 26.

We, accordingly, hold the restrictions in the case at bar preclude the construction of more than one dwelling on the original Lot 21.

■ The Englunds also insist the restrictions in the case at bar should not be enforced because no action had been taken by the Plaintiffs to enjoin other non-conforming uses in the subdivision. The Englunds cite us to no authority to support their argument but in *Carson v. Knaffl*, 15 Tenn.App. 507 (1932) this court held, at 514:

> It would put too great a burden on the purchaser to hold that because he did not file a bill to enjoin an infringement of restrictions as to a lot on a distant street, though in the same subdivision, that he could not object to the same disregard of conditions as to the lot next to him which

affected the enjoyment and value of his home.

The record in this case shows Mr. Myers, who testified for the Plaintiffs, is the owner of Lot 23, which is located one lot from the Englunds property. The most significant non-conforming uses in the subdivision occur on Lot 28, which is located on a different street, and on Lot 12, which is located at the opposite end of the subdivision from the Englund lot and the Myers lot. We, therefore, hold Mr. Myers retains the right to object to any covenant violations on Lot 21, despite other non-conforming uses in the neighborhood.

■ The Englunds also argue the restrictions should not be enforced because the character of the subdivision has changed over the years. At trial, the Englunds offered evidence showing the number of dwellings in the subdivision had increased, the amount of boat traffic on the lake had increased and more and more of the property owners were living in the subdivision year-round rather than on a seasonal basis. But this evidence does not represent the kind of material change that would justify a suspension of the restrictions in the deeds. As our supreme court explained in *Hackett v. Steele*, 201 Tenn. 120, 297 S.W.2d 63 (1956) (quoting *Bickell v. Moraio*, 117 Conn. 176, 167 A. 722 (1933), 297 S.W.2d at 67):

> It is only when there has been a radical change in the conditions existing when the restrictive covenants were created which completely defeats the objects and purposes of the covenants so that they are no longer effective, and their enforcement would not afford the protection which was in the contemplation of the parties, that equity will hold the restrictions no longer enforceable.

■ Finally, the Englunds argue the restrictions should not be enforced against them because the Plaintiffs "slept on their rights" by not bringing this action more promptly. This issue will be discussed in conjunction with the Plaintiffs' insistence that the court was in error in holding that an additional residence could be built on Lots 21–A and 21–B combined.

It appears from the chancellor's memorandum opinion that he felt the Plaintiffs should have acted sooner than they did and for that reason he entered an order which would permit the construction of an additional residence on Lots 21–A and 21–B. As pertinent here, the chancellor stated in his memorandum opinion: "As I pointed out at least in April of 1991 the lot owners were aware of the subdivision and they merely advised the Defendant of what they considered to be an apparent inconsistency. But the Defendants could have taken some steps at that time to resolve this as well. They [the Englunds] went ahead and continued spending money. *And the Plaintiffs, on the other hand, continued to sit until September of 1992.* .... In any event, the Court holds that the restrictive covenants would ordinarily preclude the subdivision of these lots pursuant to the holding in *Benton versus Bush.* The Court will further hold, however, after viewing the neighborhood, the size of the lots and the like, and the expenditure upon it by the Defendant. The Court believes that equity would be served if the Defendants were allowed to sell 21A and 21B as one lot. They have obviously expended extra money." (Emphasis ours.) At another place in his memorandum opinion, in referring to the holding in *Benton v. Bush,* 644 S.W.2d 690, he said: "However, this holding does not necessarily control the court's overall ruling in view of the delay by Plaintiffs."

The fallacy in the Defendants' argument that the Plaintiffs "had slept on their rights" and the fallacy in the court's holding they had not acted promptly lies in the fact that the Defendants had not violated the restrictions by buying the original Lot 21 by three separate deeds as Lots 21, 21–A and 21–B, nor was the Englunds' predecessor in title in violation of the restrictions by subdividing Lot 21 into three lots, nor were the Englunds in violation of the restrictions in offering Lots 21–A and 21–B for sale. The violation of the restrictions would have occurred only had the Englunds or someone else begun the construction of another residence on one of these lots. The Plaintiffs had not delayed in filing suit because no cause of action had occurred even at the time suit was filed. The suit would have been subject to dismissal

either on a Rule 12.02, TRCP, motion or motion for summary judgment had one been filed. For this reason, upon oral argument of the case counsel for the parties entered a stipulation that the case be construed as a declaratory judgment to determine the validity and applicability of the restrictive covenants in the deeds.

If the Defendants made expenditures on the grading of Lots 21–A and 21–B and the construction of the sea wall which they would not have made had they known the restrictions would be enforced, they did so at their own peril. They were aware of the restrictions on the property and after receiving the letter from the North Soddy Creek property owners they knew, or should have known, there were objections from lot owners in the subdivision to their going forward with their plans. Nevertheless, they were not deterred and proceeded with their work and expenditure of funds.

Our courts have long recognized established rules regarding the validity and enforcement of restrictive covenants. In *Benton v. Bush,* 644 S.W.2d 690, this court stated, at 691:

> It is well established law in this State that a person owning a body of land may sell portions thereof and make restrictions as to its use for the benefit of himself as well as those to whom he sells. *Laughlin, et al. v. Wagner, et al.,* 146 Tenn. 647, 244 S.W. 475 (1922); *Hamilton v. Broyles,* 57 Tenn.App. 116, 415 S.W.2d 352 (1967).... Notwithstanding the law's unfavorable regard toward restrictive covenants and its strict construction of them, such restrictions, like other contracts, will be enforced according to the clearly expressed intent of the parties. *Carr v. Trivett,* 24 Tenn.App. 308, 143 S.W.2d 900 (1940).

And in *Waller v. Thomas,* 545 S.W.2d 745, we explained, at 747:

> [T]he court is required to give a fair and reasonable meaning to restrictive covenants in order to determine the parties' intention and once the intention of the parties is ascertained, the covenant will be enforced, provided it serves a legitimate purpose and does not constitute a nuisance

per se. *White v. Gulf Refining Co.,* 156 Tenn. 474, 2 S.W.2d 414 (1928).

There have been other cases in this jurisdiction involving building restrictions in which the hardship suffered by the defendant as a result of the enforcement of the covenants by the court was more severe than it would be under the facts of the case at bar. In the *Benton* case, 644 S.W.2d at 690, the defendant had already invested in the partial construction of a residence and was put to the expense of having the structure removed. In *Carson v. Knaffl,* 15 Tenn.App. at 507, the foundation was laid for the dwelling of one of the defendants and he had entered into various contracts for construction materials. The *Carson* court nevertheless decreed the restrictive covenants were enforceable. The court stated, at 517:

> There are cases holding that restrictions cannot be enforced, but they are cases in which there was no such general improvement scheme as in the present case, or cases where the conditions have changed so as to make the restrictions inequitable as where the property restricted for residence purposes has become adapted for business purposes only. Or where the defendant purchaser had no notice and nothing to put him on notice. No case like the present can be found in which it has been held that the restrictions do not bind both grantees and grantor.

And in 20 Am.Jur.2d § 313 (1965), it is stated:

> Mere pecuniary loss to the defendant, as a result of the enforcement of a restriction, will not prevent a court of equity from enforcing it; and the fact that a large increment of value would result to the defendant's property from the refusal to enforce a restrictive covenant in his chain of title is of slight consequence on the question of its enforcement.

In view of the rules as espoused in the foregoing holdings and the facts in the case at bar, we find the evidence preponderates against the finding of the trial court that the Defendants or their successor should be permitted to construct an additional residence on Lots 21–A and 21–B combined in violation of the restrictive covenants.

The decree of the trial court will be modified to provide the Defendants may sell Lots 21–A and 21–B either separately or together but so long as the present residence remains on Lot 21, no other residence shall be erected on either Lot 21–A or 21–B or the combination thereof.

To the extent the decree is not modified, it is affirmed. The case is remanded for the entry of a decree in keeping with this opinion and the cost of this appeal is taxed to the Defendants.

GODDARD, J., and WILLIAM H. INMAN, Senior Judge, concur.