IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 16, 2011 Session

## GRAND VALLEY LAKES PROPERTY OWNERS ASSOCIATION, INC. v. DENNIS BURROW

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 06020202      J. Weber McCraw, Judge**

---

**No. W2011-00573-COA-R3-CV - Filed December 28, 2011**

---

Appellant, the owner of several lots in a subdivision managed and maintained by the Appellee home owners association, appeals the trial court's grant of summary judgment in favor of Appellee on the question of whether Appellant owed an increase in dues and fees on his lots, and the denial of his counter-claims for fraud, violation of the Tennessee Consumer Protection Act, outrageous conduct, and invalidity of the restrictive covenants on grounds that these causes of action were barred by the applicable statutes of limitation or the doctrine of laches. We conclude that the Appellee followed the correct procedure in amending its restrictive covenants to increase the amount of dues. However, because the trial court did not make findings, as required by Tennessee Rule of Civil Procedure 56.04, concerning the grounds for its application of laches, we cannot review the question of whether Appellant's counter-claims were properly dismissed. Vacated and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Matthew R. West, Jackson, Tennessee, for the appellant, Dennis Burrow.

Matthew R. Armour, Somerville, Tennessee, for the appellee, Grand Valley Lakes Property Owners Association, Inc.

## OPINION

Grand Valley Lakes Subdivision (the "Subdivision") is a platted subdivision in Saulsbury, Hardeman County, Tennessee. Grand Valley Lakes Property Owners Association,

Inc. ("Grand Valley," or "Appellee") is a non-profit corporation organized to manage and maintain the covenants and common areas of the Subdivision.

Appellant Dennis Burrow has owned multiple lots in the Subdivision, dating back to as early as 1973. Mr. Burrow owns, or has owned, lots 800, 801, 802, 807, 808, 809, and 811. All but two of these lots were purchased after March 21, 1998, when the amendments to the restrictive covenants and bylaws were adopted by Grand Valley.[1]

The original restrictive covenants were adopted and recorded in 1972. These covenants established annual dues for lot owners at $48.00 per year, and indicated that the dues would remain unchanged until at least January 1, 1982. The restrictive covenants also established a means by which the covenants could be amended, the particulars of which will be discussed below.

In *Grand Valley Lakes Property Owners Association, Inc. v. Charles Cary & Burton Shearin*, 897 S.W.2d 262 (Tenn. Ct. App. 1994) ("*Shearin*"), this Court addressed Grand Valley's attempt to amend its covenants. As will be discussed in greater detail below, in *Shearin*, we held, *inter alia*, that Grand Valley had not followed its own procedure to properly amend the restrictive covenants and that, consequently, the increased dues could not be collected from Shearin.

In March 1998, Grand Valley wished to increase its dues and fees. Based upon our holding in *Shearin*, and the specific requirements set out in its restrictive covenants, Grand Valley called a special meeting for the purpose of amending its restrictive covenants and bylaws[2]. Notice of this meeting was forwarded to all lot owners and the notice stated that the purpose of the meeting was to amend the restrictive covenants. A copy of the proposed amendments was included in the notice. Following a vote of the lot owners, the amendments passed, effective on or about March 21, 1998. Since that time, the Subdivision and Grand

---

[1] There is some confusion in the record concerning whether the amendments were voted on at a March 21, 1998 meeting or at a March 28, 1998 meeting. Although the parties' briefs indicate the meeting date as March 28, 1998, the Notice sent by Grand Valley indicates that the meeting was held on March 21, 1998. For purposes of this opinion, we will use the date set out in the Notice, i.e., March 21, 1998.

[2] Article XI, Paragraph 4 addresses the procedure for amendment of the bylaws. It provides:

> 4. Amendment to Bylaws. The bylaws may only be amended at a meeting of the membership of the corporation held for such purpose. The notice of said meeting shall set forth the proposed amendments. The bylaws shall only be amended by a vote of a majority of the members in attendance at such a meeting and entitled to vote there at.

Valley have been operating pursuant to the amended restrictive covenants.

For a period of time following the increase in dues, Mr. Burrow paid the increase on the lots he owned. In fact, Mr. Burrow took no action regarding the amendments until he was sued by Grand Valley to recover past due fees. This case has a long procedural history, which we have thoroughly reviewed. However, for purposes of this appeal, and in the interest of judicial economy, we will only include the procedure that is relevant to the issues raised herein.[3]

Grand Valley initiated this litigation on March 25, 2002 in the Hardeman County General Sessions Court, seeking to recover dues and fees (based upon the increased amounts established by the March 21, 1998 vote) from Mr. Burrow. The complaint was amended on July 26, 2006 to add additional lots to the action, and was amended a second time on October 14, 2006 to add claims for interest and late charges. By agreement of the parties, on December 13, 2006, the case was removed to the Circuit Court at Hardeman County, where protracted discovery ensued.

---

[3] As a point of practice, we note that the appellate record in this case consists of twenty volumes of technical record, comprised of 3,044 pages. In our review of every page of this prolific record, we found that the majority of the pages therein were part and parcel of the protracted discovery that took place in this case. It is, of course, incumbent upon the Appellant to prepare an adequate record for our review. Tenn. R. App. P. 24(b). However, in preparing the record, the Appellant should not lose sight of the other mandates contained in Tennessee Rule of Appellate Procedure 24. We specifically refer the parties to Tennessee Rule of Appellate Procedure 24(a), concerning the content of the appellate record. This Rule provides, in relevant part that:

> The following papers filed in the trial court are excluded from the record: (1) subpoenas or summonses for any witness or for any defendant when there is an appearance for such defendant; (2) **all papers relating to discovery, including depositions, interrogatories and answers thereto, reports of physical or mental examinations, requests to admit, and all notices, motions or orders relating thereto**; (3) any list from which jurors are selected; and (4) trial briefs; and (5) minutes of opening and closing of court. Any paper relating to discovery and offered in evidence for any purpose shall be clearly identified and treated as an exhibit. No paper need be included in the record more than once.

Tenn. R. App. P. 24(a) (emphasis added). Had the Appellant adhered to this rule regarding the exclusion of discovery, our record would certainly have been more manageable and the interest of judicial economy would have been better served. Because we very often see extraneous filings in the records, we take this opportunity to remind our future appellants that they should endeavor to adhere to the rules when submitting records to this Court.

On June 11, 2007, Grand Valley was allowed to file an amended and restated complaint in the Circuit Court. Therein, Grand Valley asks the court to award it $11,008.39 for dues, residential water charges, and water availability charges, plus $7,914.43 for prejudgment interest at 10% per annum against Mr. Burrow.[4] Grand Valley also asks for its reasonable attorney's fees. Concerning Grand Valley's decision to increase its dues and fees in March 1998, the complaint states:

> 4. On March 21, 1998, at a Special Meeting of the Members of the [Grand Valley] property owner's association, the Original Restrictions were amended and a DECLARATION OF AMENDED AND RESTATED RESTRICTIVE COVENANTS FOR GRAND VALLEY LAKES SUBDIVISION HARDEMAN COUNTY, TENNESSEE,(the "Amended Restriction") were adopted. The Amended Restrictions were recorded in Book K-16, Page 216 in the Register's Office for Hardeman County, Tennessee on April 2, 1998. Upon information and belief, [Mr. Burrow] shortly after the adoption of the Amended Restriction had actual knowledge that [Grand Valley] intended to enforce these provisions as to all Lots in Grand Valley Lakes Subdivision in the place of the Original Restrictions. The Amended Restrictions permit the Board of Directors of [Grand Valley] to set the annual dues and water charges for Lots. It also imposes late charges and costs of collection including attorneys' fees on delinquent obligations owed to [Grand Valley].

(emphasis in original). On June 22, 2007, Mr. Burrow filed his answer to the complaint, in which he denied the material allegations thereof, and specifically denied that "the alleged March 21, 1998 Special Meeting of the Members was a proper, authorized Special Meeting." Mr. Burrow further denied that "any votes and/or subsequent actions pursuant to said meeting were proper." Based upon these assertions, Mr. Burrow stated his belief that the amended restrictions (i.e., specifically, the dues increase) were not properly executed and were, therefore, void *ab initio*. Concurrent with his answer, Mr. Burrow filed a counter-complaint against Grand Valley, alleging causes of action for fraud, violation of the

---

[4] On August 5, 2010, Grand Valley was granted leave to file a second amended and restated complaint to modify its pray for relief to reflect additional dues allegedly accrued by Mr. Burrow during the pendency of the litigation. The August 5, 2010 amendment reflected a request for damages of $20,340.60 for dues, residential water, and water availability charges; $900 for Lot 801 water disconnect fees; and $21,125.75 for prejudgment interest at a rate of 10% per annum.

Tennessee Consumer Protection Act, outrageous conduct, and invalidity of the restrictive covenants. On April 18, 2008, Grand Valley filed an answer to the counter-claim. In addition to reiterating its position, as set out in the complaint, that the March 21, 1998 special meeting was valid and that the vote to amend and restate the restrictive covenants was, likewise, valid, Grand Valley also noted, in paragraph thirteen of its answer, that the bylaws adopted by the membership on March 21, 1998 permitted the Board to establish, on an annual basis on or before March 1st, the amount of regular dues for the association. Grand Valley also stated that the bylaws set the maximum annual dues at $200.00 per lot per year effective for the annual dues payable on April 1, 1998, and further limited the amount of any increase to 5% of the previous year's dues. As affirmative defenses to Mr. Burrow's counter-claims, Grand Valley raised the applicable statutes of limitation and repose, and the doctrine of laches.

On May 25, 2010, Grand Valley filed a motion for summary judgment, which requested judgment on the alleged dues/fees owed by Mr. Burrow ($42,366.35), a dismissal of Mr. Burrow's counter-claims as being barred by the applicable statute of limitations and the doctrine of laches, and an award of Grand Valley's reasonable attorney's fees. On August 3, 2010, Mr. Burrow filed a cross-motion for partial summary judgment declaring Grand Valley's March 21, 1998 amended restrictions to be void and unenforceable.

The motions for summary judgment were heard by the trial court on January 3, 2011. By Order of January 27, 2011, the court granted Grand Valley's motion for summary judgment, and denied Mr. Burrow's motion for partial summary judgment, finding his claims barred by the applicable statutes of limitation or by the doctrine of laches. On February 24, 2011, Grand Valley moved the court to alter or amend its judgment to grant a specific money judgment against Mr. Burrow, and to award Grand Valley its attorney's fees. In support of its motion, Grand Valley provided affidavits and statements to support its request for attorney's fees. Mr. Burrow opposed the motion to alter or amend, but provided no evidence to rebut Grand Valley's attorney's affidavits and statements.

On April 1, 2011, the trial court entered a final money judgment and order of dismissal, wherein it upheld the grant of summary judgment in favor of Grand Valley and the denial of Mr. Burrow's motion for partial summary judgment. The court awarded Grand Valley a money judgment in the amount of $45,786.67 for dues, water charges, interest and late fees. This amount is itemized by lot number in the trial court's order. Based upon Paragraph 5.6 of the amended restrictive covenants, which allows for recovery of attorney's fees, the trial court also awarded Grand Valley $125,000 in attorney's fees as set out in the unopposed affidavit of Grand Valley's attorney, George Fusner, Jr., for a total money judgment of $170,786.67.

Mr. Burrow appeals and raises five issues for review as stated in his brief:

> 1. Whether the trial court erred by denying Appellant's motion for partial summary judgment when there exists no genuine issue of material fact that [Grand Valley's] March 21, 1998 vote failed to properly amend its restrictive covenants pursuant to the terms of its original restrictive covenants and this Court's holding in *Shearin*.

> 2. Whether the trial court erred when it held that Appellant's counter-claims challenging [Grand Valley's] March 21, 1998 vote were "barred by applicable statutes of limitation or by the doctrine of laches."

> 3. Whether the trial court erred by granting Appellee's motion to alter or amend the judgment when no showing or finding was made as to a clear error of law or injustice.

> 4. Whether the trial court erred by granting Appellee's attorney fees when the "American Rule" requires parties to pay their own attorney fees and when the alleged, amended restrictive covenants require each party to pay their own attorney fees.

> 5. Whether the trial court erred by granting a judgment for pre-judgment interest when Appellant had a reasonable dispute to be litigated and such a judgment was merely punitive.

### Summary Judgment

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is, therefore, *de novo* with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). "This Court must make a fresh determination that the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied." *Mathews Partners, L.L.C. v. Lemme*, No. M2008–01036–COA–R3–CV, 2009 WL 3172134, at *3 (citing *Hunter v. Brown*, 955 S.W.2d 49, 50–51 (Tenn. 1977)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may

accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 8–9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." ***Id***. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." ***Id.*** at 5 (citing ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06." ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. ***Stovall v. Clarke***, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." ***Mathews Partners***, 2009 WL 3172134, at \*3 (citing ***Byrd***, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." ***Byrd***, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." ***Id***. "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." ***Landry v. South Cumberland Amoco, et al.***, No. E2009–01354–COA–R3–CV, 2010 WL 845390, at \*3 (Tenn. Ct. App. March 10, 2010) (citing ***Carvell v. Bottoms***, 900 S.W.2d 23 (Tenn. 1995)). However, if there is any uncertainty concerning a material fact, then summary judgment is not the appropriate disposition. As stated by our Supreme Court in ***Evco Corp. v. Ross***, 528 S.W.2d 20 (Tenn. 1975):

> The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He [or she] is to overrule any

motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

*Id*. at 24–25.

Concerning the contents of the trial court's order on a motion for summary judgment, as discussed in this Court's recent opinion, ***Winn v. Welch Farm, L.L.C.***, No. M2009–01595–COA–R3–CV, 2010 WL 2265451 (Tenn. Ct. App. June 4, 2010):

> In 2007, Tennessee Rule of Civil Procedure 56.04 was amended to require the trial court to "state the legal grounds upon which the court denies or grants the motion," and to include such statement in the order reflecting the trial court's ruling. When the legal grounds for the trial court's decision are omitted, a reviewing court cannot analyze the decision's validity, and appellate review becomes unnecessarily speculative. "Without such a statement ... a reviewing court is left to wonder on what grounds the trial court granted the motion for summary judgment." ***Eluhu v. HCA Health Servs. of Tenn. Inc.***, No. M2008–01152–COA–R3–CV, 2009 WL 3460370, at *21. The 2007 amendment to Tenn. R. Civ. P. 56.04 was intended to cure this problem. The Rule's requirements are specific and without exception. Tenn. R. Civ. P. 56.04; *see also* ***Eluhu***, 2009 WL 3460370, at *21(vacating the trial court's grant of summary judgment upon finding that the trial court did not state the legal grounds upon which the trial court granted the motion); ***Burse v. Hicks***, No. W2007–02848–COA–R3–CV, 2008 WL 4414718, at *2 (Tenn.Ct.App. Sept. 30, 2008) (finding noncompliance with Rule 56 .04 where trial court's order merely provided "it is hereby ordered, adjudged and decreed that the Motion for Summary Judgment of [the defendant] is well taken and should be granted pursuant to law and there being no material disputed fact," but proceeding with appellate review upon a finding that there was only a "clear legal issue").

***Winn v. Welch Farm***, 2010 WL 2265451, at *5.

In ***Winn***, this Court determined that the order appealed did not comply with Rule 56.04 because the order merely stated that "the Court believes there are no genuine issues of

material fact and that the Respondents are entitled to judgment as a matter of law .” ***Winn v. Welch Farm***, 2010 WL 2265451, at \*6. Because the ***Winn*** case did not present “a clear legal issue. ***Id***. (citation omitted), we were not able to “soldier on without guidance from the trial court.’” ***Id.*** (citing ***Church v. Perales***, 39 S.W.3d 149, 158 (Tenn. Ct. App.2000)).

In ***White v. Pulaski Elec. Sys.***, No. M2007–01835–COA–R3–CV, 2008 WL 3850525, at \*3 (Tenn. Ct. App. Aug. 18, 2008) this Court proceeded with review after determining that the legal grounds upon which the trial court granted summary judgment were “readily found” in the transcript of the hearing contained in the record and that the revisions to the rule became effective after the hearing and only twelve days prior to the entry of the order. *See also* ***Burgess v. Kone***, Inc., No. M2007–0259–COA–R3–CV, 2008 WL 2796409 (Tenn. Ct. App. July 18, 2008) (proceeding with review after finding that the basis for the trial court's decision was “readily ascertainable” from a CD–Rom of the hearing that was contained within the appellate record). By citing ***Church*** and ***White,*** we do not wish to imply that it is the obligation of this Court to scrutinize the transcript in order to discern a trial court's reasoning, and to only apply the mandatory language of Tennessee Rule of Civil Procedure 56.04 if that reasoning cannot be determined. Because a trial court speaks through its orders, ***Palmer v. Palmer***, 562 S.W.2d 833, 837 (Tenn. Ct. App.1977), Tennessee Rule of Civil Procedure 56.04 ensures that the trial court's voice is clearly understood by any reviewing court.[5]

Concerning the grant of summary judgment in favor of Grand Valley, the trial court's January 27, 2011 order merely states that it “finds no material evidence to negate any of the material statements of fact and that there is no genuine issue as to any material fact as presented by [Grand Valley] and that [Grand Valley] is entitled to summary judgment.” The

---

[5] In ***Cunningham v. Cunningham***, No. W2006–02685–COA–R3–CV, 2008 WL 2521425 (Tenn. Ct. App. June 25, 2008), this Court explained:

> A judgment must be reduced to writing in order to be valid. It is inchoate, and has no force whatever, until it has been reduced to writing and entered on the minutes of the court, and is completely within the power of the judge or Chancellor. A judge may modify, reverse, or make any other change in his judgment that he may deem proper, until it is entered on the minutes, and he may then change, modify, vacate or amend it during that term, unless the term continues longer than thirty days after the entry of the judgment, and then until the end of the thirty days.

***Cunningham***, 2008 WL 2521425, at \*5 (citing ***Broadway Motor Co., Inc. v. Fire Ins. Co.***, 12 Tenn.App. 278, 280 (1930)). Consequently, “[w]e do not review the court's oral statements, unless incorporated in a decree, but review the court's order and judgments for that is how a court speaks.” ***Id.***

April 1, 2011 final money judgment and order of dismissal does not elaborate on the trial court's grounds for the grant of summary judgment to Grand Valley. The trial court's broad statement that there is no dispute of material fact and that Grand Valley is entitled to judgment as a matter of law is insufficient to comply with the mandates of Tennessee Rule of Civil Procedure 56.04. However, despite the shortcomings in the court's orders, the question of whether Grand Valley is entitled to summary judgment presents a clear legal issue—i.e., whether Grand Valley's restrictive covenants were properly amended. The record is well developed on this question; consequently, under the precedent set in the *Church* and *White* line of cases, we will "soldier on," in the face of a lack of compliance with Rule 56.04, to address the issue of whether the amended restrictive covenants can be enforced against Mr. Burrow.

Turning to that issue, as briefly discussed above, Grand Valley was originally governed by the 1972 restrictive covenants, which provided that "[e]ach lot owner shall be subject to an annual dues charge of $48.00, which he agrees to pay to [Grand Valley]. . . as provided in the Code of Regulations of said association [i.e., the bylaws], annually, on the 1st day of April." These fees, "for the improvement, maintenance and upkeep of various areas for use of the property owners," could not be changed until after January 1, 1982. The original restrictive covenants provided two options/procedures that could be used by Grand Valley to amend the restrictive covenants and raise the dues, namely:

> All restrictions may be hereafter [i.e., after January 1, 1982] changed, altered, amended or revoked in whole or in part by the owners of the lots in the Subdivision whenever the owners of at leas[t] two thirds of the said lots so agree in writing, or by action of the Grand Valley Property Owners Association at a meeting duly called for said purpose by a vote of at least a majority of the members thereof.

These covenants remained unchanged until March 21, 1998 when Grand Valley attempted to amend them. Prior to March 1998, the record reveals that Grand Valley had a history of failed attempts to raise the dues. As noted above, one of Grand Valley's previous attempts to raise dues came before this court in *Shearin*. In that case, Burton Shearin argued that Grand Valley's bylaws governed the process for raising dues. We disagreed with Mr. Shearin, and held that: (1) Grand Valley's original restrictive covenants, as opposed to the bylaws, governed the procedure for raising dues; (2) In order to amend the original restrictive covenants, Grand Valley must amend by one of the two options/procedures set out in its restrictive covenants. *Shearin*, 897 S.W.2d at 269. Mr. Shearin's petition for *writ of certiorari* to our Supreme Court was denied on January 3, 1995, and there has been no intervening caselaw to disrupt the holding in the case.

-10-

In the instant case, Mr. Burrow argues that Grand Valley failed to follow its original restrictive covenants and this Court's holding in **Shearin** when it voted, on March 21, 1998, to amend the restrictive covenants to include an increase in dues and fees. Consequently, Mr. Burrow contends that the March 1998 amendments to the restrictive covenants are void *ab initio*. Therefore, Mr. Burrow argues that he is not bound by the amendments and does not owe the increase in dues and fees, or any penalties for failure to pay them. The issue of whether summary judgment was correctly granted to Grand Valley and denied to Mr. Burrow rests upon a determination of whether Grand Valley correctly followed its procedure for amending the restrictive covenants, or whether there is a dispute of fact concerning the procedure used. From our reading of Mr. Burrow's brief, we conclude that his argument rests, in large part, upon his interpretation of our holding in **Shearin**. As is relevant to this case, in **Shearin**, we specifically stated:

> Grand Valley sought to recover from Shearin delinquent property owner association dues alleged to be owed by him. Shearin contended that the property owner association dues had not been lawfully increased in accordance with the Restrictive Covenants as filed in the Register's Office in Hardeman County. Grand Valley asserted that the By-laws, and not the Restrictive Covenants, governed the increase of property owners' dues, and that all increases had been made in accordance with its By-laws. The chancellor found that the Restrictive Covenants governed, and that a majority of the members of the subdivision had never voted to increase the dues. The chancellor limited plaintiff's claim against Shearin to $48.00 per lot per year, and awarded defendant a judgment for excess payment of dues against plaintiff in the amount of $864.00.
> The Restrictive Covenants establish the dues of property owners at $48.00 per year per lot. The same covenants also provided that this amount could not be changed until after January 1, 1982. No attempt was ever made to change the dues according to the procedure set forth in the Restrictive Covenants, which require two-thirds of all lot owners agreeing in writing to put into effect an increase, or a meeting specially called for the purpose of changing the dues in which two-thirds [sic, *see* discussion below] of all members of the subdivision approved the increase. As to this issue, we find no error by the chancellor.

**Shearin**, 897 S.W.2d at 269.

Before going further into the question of whether the grant of summary judgment in favor of Grand Valley was error, we first pause to address two points where Mr. Burrow has incorrectly analyzed our holding in *Shearin*. As set out in full context above, we state that "the procedure set forth in the Restrictive Covenants [] requires two-thirds of all lot owners agreeing in writing to put into effect an increase, or a meeting specially called for the purpose of changing the dues in which **two-thirds** of all members of the subdivision approved the increase." *Shearin*, 897 S.W.2d at 269 (emphasis added). Our statement that two-thirds approval is required is a misnomer. Our holding in *Shearin* is that the restrictive covenants govern the procedure for amendments. *Id.* As set out above, the restrictive covenants clearly state that it is the majority that must prevail in the vote, and not two-thirds of the members. While we concede that our mistake in *Shearin* may cause confusion, we now wish to clarify that it is the majority vote that counts under the restrictive covenants and not the two-third's vote. So, under *Shearin*, in order to amend its restrictive covenants to raise dues, Grand Valley must follow its restrictive covenants, which require Grand Valley to either obtain the agreement of two thirds of the lot owners in writing, or to duly call a meeting at which at least a **majority** of the members vote for the amendment.

From his brief, Mr. Burrow also misconstrues our holding in *Shearin* (i.e., that the restrictive covenants control) to mean that the bylaws have no bearing on Grand Valley's actions. Consequently, his brief does not rely on the bylaws, and, in fact, argues that the bylaws should not be considered based upon our holding in *Shearin*. While it is the restrictive covenants that govern the applicable amendment procedure, our holding in *Shearin* does not go so far as hold that the bylaws should be ignored all together. Our holding, therefore, is more narrow than Mr. Burrow's brief suggests. In *Shearin*, it was the correct procedure (as between that set out in the restrictive covenants and that set out in the bylaws) that was the issue. Because the restrictive covenants specifically set out the procedure for amendments thereto, we held that the procedure outlined in the restrictive covenants controlled any attempts to amend them. In the instant case, however, the issue is slightly different. The question here is whether that procedure was actually followed. Contrary to Mr. Burrow's contention that we should ignore the bylaws in addressing this question, a close reading of the restrictive covenants indicates that the restrictive covenants and the bylaws are not mutually exclusive. The plain language of the restrictive covenants supports this interpretation, when it refers to "annual dues. . . as provided in the Code of Regulations [i.e., the bylaws]," and that the owners must also "comply with all rules and regulations from time to time promulgated by said Association." Consequently, if the restrictive covenants do not specifically or thoroughly address a question, then we would look to the bylaws for more guidance.

Because the instant case involves the interpretation of restrictive covenants, we apply well-established rules of construction and law in order to construe the terms of the covenants.

*Parks v. Richardson*, 567 S.W.2d 465, 467 (Tenn. Ct. App. 1977). In the instant case, we interpret the restrictive covenants to allow reference to the bylaws when there is some question left unanswered by the restrictive covenants. However, where the restrictive covenants clearly outline the procedure for amendment, we do not need to go outside the four corners of the restrictive covenants. *Shearin*, 897 S.W.2d at 269. Thus, if the "meaning of the covenant is reasonable and unambiguous, there is no need to seek further clarification outside its language." *Shea v. Sargent*, 499 S.W.2d 871, 874 (Tenn. 1973). If the language of the restrictive covenant is unambiguous, and its plain meaning is fair and reasonable, then its terms may not be altered or varied by parol evidence. *Hicks*, 978 S.W.2d at 547–48 (citations omitted). However, if the bylaws are needed, then we would also interpret them in compliance with the well-established rules governing interpretation of other written contracts, where the primary goal is to ascertain the intention of the parties as expressed by the language of the document itself. *See Hicks v. Cox*, 978 S.W.2d 544, 547 (Tenn. Ct. App. 1998). The words of a contract must be given their usual and ordinary meaning. *Hicks*, 978 S.W.2d at 547 (citing *Aldridge v. Morgan*, 912 S.W.2d 151, 153 (Tenn. Ct. App. 1995); *Rainey v. Stansell*, 836 S.W.2d 117, 119 (Tenn. Ct. App. 1992)).[6]

Returning to the question of summary judgment, because there is no written agreement of two-third's of the lot owners, in the instant case we are concerned only with the second option for the amendments (i.e., a duly called meeting where a majority of owners vote for the amendment). The restrictive covenants do not define what is meant by "duly called," or who is an "owner" for purposes of voting. Consequently, we find guidance on these questions in the bylaws, and particularly Article V thereof, which provides, in relevant part that:

---

[6] We are mindful that restrictions on the free use and enjoyment of real property are not favored in Tennessee. *See, e.g ., Waller v. Thomas*, 545 S.W.2d 745, 747 (Tenn. Ct. App. 1976). As such, "a restrictive covenant, being in derogation of the free use and enjoyment of property, will be strictly construed against the restriction and in favor of the reasonable use of the property, so that only uses clearly prohibited will be held precluded by such a covenant." *Parks*, 567 S.W.2d at 468 (citing *Shea*, 499 S.W.2d at 872–73; *Lowe v. Wilson*, 250 S.W.2d 366, 367 (Tenn. 1952)). Any doubt concerning the applicability of a restrictive covenant will be resolved against the restriction. *Richards v. Abbottsford Homeowners Ass'n*, 809 S.W.2d 193, 195 (Tenn. Ct. App. 1990). Likewise, any ambiguity in the terms of the restrictive covenant will be resolved against the restriction. *Parks*, 567 S.W.2d at 468; *see also Waller*, 545 S.W.2d at 747. Restrictive covenants "will not be extended by implication to anything not clearly and expressly prohibited by their plain terms." *Turnley v. Garfinkel*, 362 S.W.2d 921, 923 (Tenn. 1962); *see also Maples Homeowners Ass'n, Inc. v. T & R Nashville Ltd. P'ship*, 993 S.W.2d 36, 39 (Tenn. Ct. App. 1998). Nevertheless, courts are required to give a fair and reasonable meaning to the restrictive covenant, *Jones v. England*, 870 S.W.2d 525, 529 (Tenn. Ct. App. 1993), and "such restrictions, like other contracts, will be enforced according to the clearly expressed intention of the parties." *Benton v. Bush*, 644 S.W.2d 690, 691 (Tenn. Ct. App. 1982). We conclude that our interpretation of the restrictive covenants to allow referral to the bylaws is not in derogation of the intent of the drafters, and is not otherwise an extension of the restrictive covenants.

-13-

3. Special Meetings. Special meetings of the members of the corporation may be called by the President, Vice-President, Secretary, or by a majority of the Board of Directors. A meeting must be called by any such officer upon receipt of a written request for a special meeting signed by not less than 10% of all members having voting rights. Such written request shall state the purpose or purposes of the proposed meeting. Said meeting shall be called and held within thirty (30) days of receipt of the written request or by a vote of the Board of Directors. It shall not be necessary for the Board of Directors to hold a meeting to call the meeting following receipt of the written request. The business transacted at the special meeting shall be confined to the purposes stated in the notice unless four-fifths of the members present, either in person or by proxy, consent.

4. Fixing Record Date: Only those members of record, fifteen days before any meeting of the corporation and who are in good standing at the time of the meeting shall be entitled to notice of such meeting and be entitled to vote at said meeting.

5. Notice of Meetings. Notice of meetings of the members of the corporation shall be given to all eligible members. Notice of the meetings, other than the annual meeting, shall indicate and state that it is issued by or called at the direction of the person or persons calling the meeting and state the items to be considered at the meeting. All notices of any meetings shall be mailed not less than (10) nor more than thirty (30) days prior to the date of the meeting.

6. Waiver of Notice. Notice of meetings need not be given to any member of the corporation who signs a waiver of notice, whether in person or by proxy, whether before or after the meeting. The attendance of any member at a meeting, in person or proxy, without protesting the lack of knowledge prior to the conclusion of the meeting shall constitute a waiver of notice of the meeting to him.

***

8. Voting. Each member shall be entitled to one vote per lot owned on each matter submitted to a vote of the members.

Article IV of the bylaws addresses membership and provides, in pertinent part, that:

-14-

1. _Eligibility_. Every person who purchases a lot in the Grand Valley Lakes Subdivision become[s] a member of this corporation; and the developer shall be a member until it no longer has an interest in the subdivision and resigns.

The bylaws further states that, "when any member shall be in default for a period of thirty (30) days in the payment of dues or assessments following the adoption thereof, he shall, for purposes of voting, not be considered as a member in good standing."

Turning to the record, Grand Valley's voting records were attested to by its Secretary, Ann Wood. Ms. Wood's testimony is corroborated by the March 21, 1998 Certificate of Secretary, and the Announcement of Vote. Mr. Burrow concedes that Ms. Wood's testimony, and the supporting documentation "fairly and accurately depict the results of the March 21, 1998 vote." In short, Ms. Wood's testimony is uncontested. Her records show that, at the time of the March 21, 1998 vote, Grand Valley had 1,888 members in good standing. The total members present, including by proxy, was 1,056. 1,044 votes were cast in favor of the amendments.

Relying upon our incorrect statement in **Shearin** (i.e., that the second option for amending the restrictive covenants required two-thirds of the vote, rather than a majority), Mr. Burrow first contends that the amendments could only pass if two-thirds, or 1,258 votes, were cast in favor of the changes. Again, our holding in **Shearin** was that the restrictive covenants governed amendments. As set out above, the restrictive covenants clearly state that the majority vote is required. Consequently, the 1,044 affirmative votes were sufficient to carry the motion to amend the restrictive covenants.

It is uncontested in the record that the votes cast at the March 21, 1998 meeting were not one member – one vote. Rather, the votes represented each lot that was in good standing. So, many members cast more than one vote depending on how many lots in good standing that member owned. Mr. Burrow argues that this one lot – one vote arrangement is erroneous, and that each member, regardless of how many lots he or she owns, gets only one vote. This interpretation is clearly in conflict with the bylaws. Having previously determined that the bylaws may be considered when interpreting any amendment questions that are left unanswered in the restrictive covenants, the bylaws clearly state that, in special meetings, "[e]ach member shall be entitled to one vote per lot owned on each matter submitted to a vote of the members." Mr. Burrow further contends that, because one entity, Valley Development Company, LLC, was allowed to cast 662 separate votes, one for each

of its 662 lots, it was allowed to control the vote.[7] While this may be true the bylaws explain that "the developer shall be a member until it no longer has an interest in the subdivision and resigns." Consequently, under the plain language of the bylaws, we cannot conclude that this practice conflicted with Grand Valley's rules and regulations so as to render the vote void.

Mr. Burrow's remaining arguments concerning the validity of the March 21, 1998 vote rest upon his assertion that the Special Meeting was not correctly called, and that the notice given was insufficient. It is undisputed that the following notice was sent to all members and that the notice was also posted in public areas of the Subdivision on or about March 9, 1998:

**NOTICE**
**OF**
**SPECIAL MEETING OF MEMBERS**
**MARCH 21, 1998 10 A.M.**

**POA OFFICE**
**135 GOLD DRIVE**
**SAULSBURY, TN 38067**

Notice is hereby given of a Special Called Meeting of the members of the Grand Valley Lakes Property Owners Association, Inc. (the "Association") for Saturday, March 21, 1998. . . . The purpose of the meeting is to consider the adoption of:

1. AMENDED AND RESTATED BYLAWS OF GRAND VALLEY LAKES PROPERTY OWNERS ASSOCIATION, INC.

2. DECLARATION OF AMENDED AND RESTATED RESTRICTIVE COVENANTS FOR GRAND VALLEY LAKES SUBDIVISION, HARDEMAN COUNTY, TENNESSEE; and

3. Any other business that may lawfully come before a Special Called Meeting of Members of the Association.

---

[7] We infer from the record that Valley Development Company, L.L.C. is the developer of the Subdivision, and that it retained ownership of these 662 lots that remained unsold.

Copies of the Bylaws and Restrictive Covenants to be considered and voted upon are enclosed with this notice. The Board of Directors approved these documents, recommended their adoption by the members, and called this special meeting at board meetings held on February 13 and 27, 1998.

(emphasis in original). In addition to the foregoing notice, the Board of Directors also sent the following information to all property owners in an open letter, which provides, in pertinent part, as follows:

Enclosed with this letter you will find a Notice of a Special Called Meeting of Members setting a meeting for March 21, 1998.

**THIS IS THE MOST IMPORTANT MEETING EVER HELD AT GRAND VALLEY.**

The purpose of the meeting is to adopt revised Bylaws and Restrictive Covenants for Grand Valley. Our existing documents were created in 1972 and are outdated. Adverse court rulings have severely limited the Association's ability to raise funds and carry out its functions in operating the common facility and amenities. Without the adoption of these documents the Property Owners Association will not be able to continue to function. The value of your property will decrease significantly as a result.

Please carefully read the enclosed Bylaws and Restrictive Covenants and plan to attend the Special Called Meeting.[8]

The Declaration of Amended and Restated Covenants and Bylaws for the Subdivision was included with this correspondence.

As set out above, the Notice specifically states that the "Board of Directors . . . called this special meeting at board meetings held on February 13 and 27, 1998." Mr. Burrow contends that a special meeting to raise dues cannot be called by the Board, but must be called by the members of Grand Valley. We disagree. The bylaws specifically provide that "[s]pecial meetings of the members of the corporation may be called by the President, Vice-

---

[8] A proxy form was also included for those members who were unable to be present at the meeting.

President, Secretary, **or by a majority of the Board of Directors**." Although the bylaws go on to say that "[a] meeting must be called by any such officer upon receipt of a written request for a special meeting signed by not less than 10% of all members having voting rights," we cannot go so far as to interpret this language to require a written request signed by not less than 10% of all members before a meeting may be called. While a written request of the members is one way to necessitate the call of a special meeting, the bylaws clearly allow that a meeting may also be called at the behest of a majority of the Board of Directors. This is what happened here. Consequently, the fact that it was the Board of Directors that called the special meeting does not negate the validity thereof.

Mr. Burrow further argues that the Notice did not clearly indicate that it was for the purpose of raising dues. As set out in full context above, the restrictive covenants require that the meeting be "duly called for said purpose." Mr. Burrow reads the language "for said purpose" to require that the meeting be called "for said purpose of raising dues." We cannot adopt Mr. Burrow's reading of the restrictive covenants. The restrictive covenants require that, in order to **amend the restrictive covenants**, a meeting must be called for that purpose [i.e., the meeting must be called for the purpose of amending the restrictive covenants]." That is what happened in this case. As set out in the Notice above, the Board of Directors called the special meeting for the purpose of amending the bylaws and restrictive covenants. Consequently, the restrictive covenants were satisfied. However, even if we give Mr. Burrow the benefit of all inferences, and assume, *arguendo*, that the Notice required a specific statement that the meeting's purpose was to raise dues and fees, this requirement was satisfied by the inclusion of the amended and restated restrictive covenants and bylaws in the mailing.

Finally, Mr. Burrow argues that Grand Valley improperly eliminated votes of lot owners who were not in good standing. His argument rests upon his sole reliance upon the restrictive covenants, which do not specifically indicate that the votes of members not in good standing are to be omitted from any vote to amend the restrictive covenants. Again, Mr. Burrow's argument fails to consider the bylaws, which clearly state that "[o]nly those members of record, fifteen days before any meeting of the corporation and who are in good standing at the time of the meeting shall be entitled to notice of such meeting and be entitled to vote at said meeting," and that, "when any member shall be in default for a period of thirty (30) days in the payment of dues or assessments following the adoption thereof, he shall, for purposes of voting, not be considered as a member in good standing." It is undisputed that the foregoing Notice was forwarded to all members, regardless of whether their dues were fully paid. However, no votes cast by members not in good standing were counted. Because the restrictive covenants do not specifically address the question of who is entitled to notice, and who may vote at the called meeting to amend the restrictive covenants, we find guidance in the bylaws. We can only interpret the foregoing provisions in the bylaws to bar the

consideration of any votes cast by members not in good standing. Consequently, we cannot conclude that the omission of these votes was error on the part of Grand Valley.

Having determined that the undisputed facts in the record clearly support a finding that Grand Valley followed its own restrictive covenants in voting to amend its restrictive covenants and bylaws, the grant of summary judgment in favor of Grand Valley on the question of the validity of the March 21, 1998 vote was correct unless any of Mr. Burrow's counter-claims survive. We now turn to address that question.

**Statutes of Limitation and Laches**

The trial court held that Mr. Burrow's counter-claims of fraud, violation of the Tennessee Consumer Protection Act, Outrageous Conduct, and invalidity of the restrictive covenants were "barred by the applicable statutes of limitations or by the doctrine of laches." Neither the January 27, 2011 order, nor the April 1, 2011 order, state which statutes of limitation are applicable to Mr. Burrow's claims. Grand Valley's motion for summary judgment argues that Mr. Burrow's claims are barred by Tennessee's six-year statute of limitations for breach of contract; the three year statute of limitations for property damage; and the one-year statute of limitations for the violation of the Tennessee Consumer Protection Act. Mr. Burrow's counter-claims were originally filed on June 20, 2007, which is over nine years from the March 21, 1998 approval of the contested amendments to the restrictive covenants.

We have previously determined that Grand Valley's amendments to its restrictive covenants were not void *ab inito* for failure to comply with the applicable procedure. Consequently, Mr. Burrow's first argument that statutes of limitations do not apply to void instruments is not well taken.

Because Mr. Burrow's counter-claims were filed over nine years after the amendments were approved, it is obvious that all applicable statutes of limitation had expired by this time. Mr. Burrow cites Tennessee Code Annotated Section 28-1-114 as a "saving" statute, which he argues tolls the application of the statutes of limitation in this case. Tennessee Code Annotated Section 28-1-114 provides, in relevant part, that:

> (a) A counterclaim or third party complaint or cross-claim is not barred by the applicable statute of limitations or any statutory limitation of time, however characterized, if it was not barred at the time the claims asserted in the complaint were interposed.

This lawsuit was initiated when Grand Valley filed its original complaint on March

25, 2002, which was just over four years from the date of the amendments to the restrictive covenants. Consequently, we concede that Tennessee Code Annotated Section 28-1-114 could have been applied in this case to "save" some of Mr. Burrow's counter-claims that were not time barred at the time of the filing of the complaint. Although, in denying his claims, the trial court obviously did not apply Tennessee Code Annotated Section 28-1-114, the court's order does not state the reason(s) why the statute did not operate to "save" any of Mr. Burrow's claims. The lack of explanation in the order may be the result of the court's application of the doctrine of laches in this case, i.e., if laches applies then it would not be necessary to determine whether Tennessee Code Annotated Section 28-1-114 stops the tolling of the statutes of limitation.

"Unreasonable delay in pursuing rights calls the equitable doctrine of laches into play to prevent assertion of stale claims." *Tennessee Pine Co. v. Via*, No. W1999-00558-COA-R3-CV, 2000 WL 34411147, at *5 (Tenn. Ct. App. Aug. 25, 2000) (citing *Nunley v. Nunley*, 925 S.W.2d 538, 542 (Tenn. Ct. App. 1996)). However, delay, by itself, is not sufficient to invoke the doctrine of laches. *Id* . The determinative test "is not the length of time that has elapsed, but whether, because of such lapse of time, the party relying on laches as a defense has been prejudiced by the delay." *Id*. (quoting *Nunley*, 925 S.W.2d at 542). "Generally, the doctrine of laches applies to actions not governed by a statute of limitations." *Briceno v. Briceno*, No. M2006-01927-COA-R3-CV, 2007 WL 4146280, at *4 (Tenn. Ct. App. Nov. 21, 2007) (citing *Gleason v. Gleason*, 164 S.W.3d 588, 592 (Tenn. Ct. App. 2004); *Dennis Joslin Co. v. Johnson*, 138 S.W.3d 197, 201 (Tenn. Ct. App. 2003)). Where the action is governed by a statute of limitations, the doctrine of laches may shorten that time period if the plaintiff is guilty of gross laches by unreasonably acquiescing in adverse rights for a long duration of time, causing "prejudice to the defendant such as the loss of evidence and witnesses or a considerable accumulation of interest resulting from the unjustified delay of the plaintiff." *Id*. (citations omitted). "It is an equitable defense which requires the finder of fact to determine whether it would be inequitable or unjust to enforce the claimant's rights." *Estate of Baker v. King*, 207 S.W.3d at 264. A trial court's decision regarding whether to apply the doctrine of laches will not be reversed absent an abuse of discretion. *Id.* at *3; *Estate of Baker* 207 S.W.3d at 264; *Griffin v. Lester*, No. W2004-02072-COA-R3-CV, 2005 WL 3199279, at *5 (Tenn. Ct. App. Nov. 30, 2005); *Tennessee Pine Co.*, 2000 WL 34411147 at *6. Under the abuse of discretion standard, the trial court's decision "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." *Camp v. Camp*, No. W2010–01037, COA–R3–CV, 2011 WL 2567542, at *5 (Tenn. Ct. App. June 29, 2011) (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)). The abuse of discretion standard involves "a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal." *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citing *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009)). The

standard "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives." *Lee Medical*, Inc., 312 S.W.3d at 524 (citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999)). Accordingly, appellate courts are not permitted to "second guess" the trial court's determinations or to substitute their judgment for that of the trial court. *Lee Medical, Inc.*, 312 S.W.3d at 524 (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)). "The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny." *Lee Medical, Inc*., 312 S.W.3d at 524 (citing *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002)).

In arguing that the doctrine of laches should not apply in this case, Mr. Burrow states that he first became aware "of the actual numerical results of the March 2[1], 1998 vote during the pendency of discovery in this matter [i.e., July 12, 2006]." While the "discovery rule" doctrine may apply "to alleviate the intolerable result of barring a cause of action by holding that it 'accrued' before the discovery of the injury or wrong," *see, e.g., Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982), even giving Mr. Burrow every reasonable inference in his favor, the record simply does not support his contention that he was unaware of the amendments until late in the discovery process.

By his own admission, Mr. Burrow "was advised that there was going to be a vote on March 21st." Although he further states that he "was unaware that a vote did occur," it is undisputed that Grand Valley sent a Notice to all members and further posted the Notice in the Subdivision common areas. There is no indication in the record that Mr. Burrow failed to receive the Notice mailing, which also, as noted above, included the proposed amendments. Furthermore, it is undisputed that, on April 2, 1998, the amended and restated restrictive covenants and bylaws were filed with the Hardeman County Register's Office pursuant to Tennessee Code Annotated Section 66-24-101. Tennessee Code Annotated Section 66-26-102 provides: "All of the instruments registered pursuant to § 66-24-101 shall be notice to all the world from the time they are noted for registration, as prescribed in § 8-13-108; and shall take effect from such time."

Even assuming that the record supports a finding that Mr. Burrow did unreasonably delay his contest of the amended restrictive covenants, delay, alone, is not sufficient to trigger the application of the equitable doctrine of laches. The party relying upon laches must also have been prejudiced by the delay. In the instant case the trial court's order merely states that laches applies, but it does not state the grounds for that finding, and specifically does not address what, if any, prejudice Grand Valley suffered as a result of Mr. Burrow's inaction. Unlike the question of whether Grand Valley properly followed its procedure for amending the restrictive covenants, the question of whether laches should apply is very fact specific as it involves a weighing of the equities between the parties. In the absence of

-21-

Tennessee Rule of Civil Procedure 56.04 findings, this Court cannot determine the trial court's reasoning in applying laches and in failing to apply Tennessee Code Annotated Section 28-1-114. Therefore, if this Court were to proceed with adjudication of the issue of whether the doctrine of laches was properly applied in this case, we would, at best, be speculating as to the reasoning behind the trial court's decision and the facts it considered. In short, "[w]e cannot proceed with a review, speculating on the legal theories upon which the trial court may have ruled and the legal conclusions the trial court may have made." *Winn*, 2010 WL 2265451, at *6. We must remand this case to the trial court for compliance with Tennessee Rule of Civil Procedure 56.04 on the dismissal of Mr. Burrow's counter-claims. As mentioned above, if the doctrine of laches does not apply or if Tennessee Code Annotated Section 28-1-114 is applicable to "save" Mr. Burrow's counter-claims, then the grant of summary judgment in favor of Grand Valley was premature. Consequently, we must vacate the order of the trial court and remand for further proceedings consistent with this Opinion, including compliance with Tennessee Rule of Civil Procedure 56.04 by stating the legal grounds upon which the court denied Mr. Burrow's counter-claims.

Because we cannot determine whether Mr. Burrow's counter-claims were properly dismissed and, thus, whether the grant of summary judgment in favor of Grand Valley was proper, we pretermit the remaining issues concerning the grant of the motion to alter or amend, the award of attorney's fees, and the award of pre-judgment interest.

For the foregoing reasons, we vacate the judgment of the trial court and remand for further proceedings consistent with this opinion. Costs of this appeal are assessed one-half to the Appellant, Dennis Burrow, and his surety, and one-half to the Appellee, Grand Valley Lakes Property Owners Association, Inc., for which execution may issue if necessary.

_____

J. STEVEN STAFFORD, JUDGE