# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### December 10, 2012 Session

## LESLIE DWIGHT COFFEY v. PAULA SUE COFFEY

**Appeal from the Circuit Court for Hamilton County**
**No. 04D334      L. Marie Williams, Judge**

---

**No. E2012-00143-COA-R3-CV-FILED-MARCH 28, 2013**

---

Leslie Dwight Coffey ("Husband") filed this action for divorce against his spouse, Paula Sue Coffey ("Wife"). During the course of the proceedings, Husband was held in contempt on no less than four separate occasions. The contempt findings were sometimes related to some aspect of his refusal to pay child support. He was also found guilty of contemptuous conduct related to other matters. Each time, his sentence was suspended. Eventually, the suspended time amounted to a total of 50 days in jail. After over ten years of litigation, Wife filed two separate petitions asking that Husband show cause why he should not be held in criminal contempt. On the second petition, the court found Husband in criminal contempt, revoked the suspensions of the previously-imposed sentences and imposed a five day sentence for the new contempt. The court also awarded Wife $10,000 in attorney's fees in a separate order entered the morning after Wife's counsel filed an affidavit claiming over $20,000 in fees and expenses. Husband appeals. We affirm that part of the judgment holding Husband in criminal contempt and ordering him to serve a total of 55 days, which figure includes the previously-suspended sentences. We vacate that part of the judgment awarding Wife $10,000 in attorney's fees and remand for a hearing to allow Husband an opportunity to challenge the fees and expenses claimed by Wife's counsel.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part and Vacated in Part; Case Remanded**

CHARLES D. SUSANO, JR., PJ., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Phillip C. Lawrence, Chattanooga, Tennessee, for the appellant, Leslie Dwight Coffey.

Gary R. Patrick, Elizabeth M. Hill and McKinley S. Lundy, Jr., Chattanooga, Tennessee, for the appellee, Paula Sue Coffey.

# OPINION

## I.

The parties were married on January 19, 1998. Three children were born to their union. Husband filed a complaint for divorce on or about February 11, 2004. On or about November 10, 2004, the court entered an order granting the parties an absolute divorce based upon their stipulation pursuant to Tenn. Code Ann. § 36-4-129 (2010) that grounds existed. The court reserved all other issues for a later determination. It eventually referred all the financial issues to a special master. The same day, the court entered an order ("the November 2004 Order") holding Husband

> in contempt of Court in the following particulars for which the corresponding punishment is imposed:
>
> a. [Husband] willfully and intentionally failed to comply with the orders of the Court pertaining to the timely delivery of the parties' children to their day care facility (hereinafter referred to as "E-Kids") and failed to utilize E-Kids as the transition point for the exchange of residential placement between the parties, for which such violations [Husband] is sentenced to a term of confinement in the Hamilton County Jail for a period of ten (10) days.
>
> b. [Husband] willfully and intentionally failed to comply with the order of the Court pertaining to delivery of [Wife's] personal property to her, for which such violation [Husband] is sentenced to a term of confinement in the Hamilton County Jail for a period of ten (10) days.
>
> c. [Husband] willfully and intentionally failed to comply with the orders of the Court with respect to being enjoined from having contact with [Wife] by coming to her home on May 16, 2004, at which time he willfully broke her camera and by his repeated telephone calls and other communications with [Wife], for which such violation [Husband] is sentenced to a term of confinement in the Hamilton County Jail for a period of ten (10) days.

The sentences of confinement in the Hamilton County Jail referred to in the immediately preceding paragraph of this order and judgment are suspended upon the condition of [Husband's] strict compliance in the future with all orders of this Court, those that are currently entered and those that may be entered in the future, the violation of which orders will expose [Husband] to having the suspension of the terms of confinement revoked and the commencement of the terms of confinement being ordered into execution.

(Paragraph numbers omitted.) The order also set a detailed schedule regarding Husband's parenting time as well as "sums of money" owed to Wife, including monies withheld by Husband from his child support obligation, "[w]hich sums shall be paid to [Wife] within thirty (30) days . . . of the entry of this order and judgment."

Wife soon filed another petition for contempt asking that Husband be held in contempt for, among other things, his failure to pay $2,400 per month in child support as previously ordered, and his failure to pay "in excess of $2,500" in medical expenses for the parties' children and his failure to pay Wife's automobile payments and insurance. In an ordered entered in October of 2005 ("the October 2005 order"), the court once again found Husband

in contempt of Court for the violation of the prior orders of the Court with regard to the times that the children were required to attend E-Kids day care and the timely payment of his child support obligation, and [Husband] is sentenced to serve a term of ten (10) days in the Hamilton County Jail for each of these violations, making a total sentence of twenty (20) days; however, these sentences are suspended.

The prior sentences of three (3) consecutive periods [of] ten days confinement in the Hamilton County Jail, which were suspended upon condition of [Husband's] strict compliance in the future with all orders of this Court, are ordered into execution with the result that [Husband] is ordered to be confined in the Hamilton County Jail for a total period of thirty (30) days under the following conditions:

(a) The sentences that are ordered into execution, or any part thereof, may be waived by [Wife] in the hope that the exercise

-3-

of this power . . . will encourage the parties to cooperate together for the benefit of the children. . . .

(Paragraph numbering in original omitted.) The October 2005 Order incorporated the court's opinion rendered from the bench in which it characterized Husband's violations as "blatant" and "with no excuse" other than Husband's refusal to accept the court's judgment regarding the best interest of the children over his own – all in the face of a previous order holding him in willful contempt. In the memorandum opinion, the court stated: "On the 30, [Wife] can agree that it is suspended again."

In a later motion for contempt, Wife admitted that "[i]n a good faith effort to show cooperation, [Wife] consented to the suspension of the jail sentences." That particular motion was resolved by agreement of the parties and dismissed with prejudice.

After receiving the special master's report as well as the parties' objections to same, the court entered a "Final Order and Judgment" in which the court: (1) awarded Wife alimony in solido in the amount of $602,044.10, payable per a schedule established by the court with the obligation to be secured by deeds of trust to real property; (2) awarded Wife transitional alimony of $2,500 per month for a period of 24 months; (3) determined the parties' separate property and divided the marital property; and (4) stated that "[a]ll temporary and interim orders of the Court and temporary restraining orders, statutory and otherwise, are hereby vacated, set aside and held for naught."

On or about February 5, 2009, Wife filed a new motion seeking an order finding Husband in contempt for failure to pay child support. The amount of the arrearage as stated in an amended motion was $11,767.20. The court found Husband "to be in contempt of court for failure to pay child support and medical expenses in a timely manner." The court also held Husband in contempt for failing, for approximately one year, to provide health insurance for the children. The court did not impose any penalties for the contempt. The court also determined that the parties' income had changed for the purpose of child support. It determined that Wife's income was $33,000 *per year* and Husband's was $15,100 *per month*. The court ordered the parties to prepare a child support worksheet that incorporated the court's relevant findings.

Wife next filed another motion for contempt, which was amended numerous times. She also filed a "Petition for Criminal Contempt" which generated an order that Husband show cause why he should not be held in criminal contempt. Husband moved that the latter petition should be dismissed for failure to comply with the Tennessee Rules of Criminal Procedure. The court entered an order in which it agreed that the Rules of Criminal Procedure, including the requirement of proof of guilt beyond a reasonable doubt, control

criminal contempt proceedings, but held that the show cause order provided adequate notice to Husband to satisfy those rules. Eventually, the court entered an agreed order that accelerated all of Husbands monetary obligations to Wife and reduced them to judgment, but reserved certain limited issues for later determination.

On or about December 17, 2010, Wife filed yet another petition for criminal contempt. The petition detailed the previous findings of contempt as well as Husband's continued failure to pay child support, his failure to make alimony payments as ordered, and his actions to encumber or otherwise defeat any equity in the property that, by order of the court, had been provided as security for Husband's financial obligations to Wife. Husband was ordered to show cause why he should not be held in criminal contempt.

Before the criminal contempt hearing was conducted, the special master once again filed a report "on the following two issues: (1) what is the amount of child support which is owed by the [Husband] to the [Wife] through May 2011; and (2) what is the amount of the [Husband's] future child support obligation accruing after July 27, 2010?" To answer those questions, the master determined that he must first determine the income of each party. The master found that, contrary to Husband's assertions that he had practically no income, Husband was drawing an average of $10,355.67 per month from one of his businesses to pay such things as private school tuition for one of his children not born of this marriage, health insurance for himself and his new wife and her children, promissory note payments owed by his new wife, monthly dues of two country clubs, restaurant meals and groceries. Further, during a three month period of time, Husband had paid into one business a total of $36,840.61 from other business interests. The special master stated that "the problem with [Husband] is that he has for the past three years utilized his available funds for all those things on and in which he wants and desires to spend and invest, instead of paying basic child support . . . [which] should have been his first priority." The special master also "found [Husband] to be a very likeable fellow . . . and the proof shows . . . [Husband] is one of these gentlemen who will do what he wants when he wants to do it . . . ." The special master found Husband's income for child support purposes to be $14,500 per month. Both parties filed objections to the special master's report.

The court later confirmed the special master's report in its entirety except to the extent the master reported on whether Husband should be held in criminal contempt, which the court noted to be outside the special master's authority. With regard to the petition for contempt, the court stated:

> The Court has heard evidence on the petition for contempt. . . .
> The Court finds the primary issue before the Court is whether or
> not [Husband] had the ability to meet his alimony and child

support obligations at the times he has failed to do so. The Court finds by clear and convincing evidence and for reasons articulated in the Special Master's Report that [Husband] did have the ability to make his child support payments and continues to have the ability to make child support payments and has willfully refused to do so. The Court has observed the demeanor of the parties and, upon that observation and the testimony of the parties, finds [Husband's] assertions he could not pay child support without credibility. He simply chose what he wanted to pay and support was not what he wanted to pay or did pay. The Court ORDERS the prior suspended sentences which total fifty (50) days be implemented as he has failed to comply with the Orders of this Court. Additionally, the Court ORDERS an additional five (5) days sentence as a result of the finding of criminal contempt, which sentences shall begin to be served within ten (10) days of entry of this Order and shall be served day for day consecutively.

* * *

Counsel for [Wife] shall submit an attorney's fee affidavit and an Order awarding attorney's fee with the amount of the award in blank. . . .

(Capitalization in original.) Husband filed his notice of appeal on January 18, 2012. At 3:35 p.m. on February 14, 2012, Wife's counsel filed an affidavit claiming fees of $18,897.25 related to the petition for contempt and expenses of $1,714.31. At 9:29 on the morning of February 15, the court entered an order granting attorney's fees and costs in the amount of $10,000.

## II.

Husband raises the following issues on appeal:

Did the trial court err as a matter of law by revoking the suspension of the prior contempt judgments where the issue of the prior contempt judgments had been determined by a prior order of the trial court?

Did the trial court err as a matter of law by revoking the suspension of [Husband's] prior contempt sentences when [Wife] had waived her right to seek the revocation of the sentences?

Did the trial court erred [sic] as a matter of law by revoking the suspension of [Husband's] sentences after the limitation of the time within which the sentences could have been revoked?

Did the trial court err as a matter of law by applying an incorrect standard of proof in finding that [Husband] was guilty of criminal contempt?

Did the trial court err as a matter of law by imposing punishment for a failure to pay a child support arrearage as contempt without making a finding as to the amount of child support arrearage to be paid to purge the contempt?

Did the trial court abuse its discretion in awarding attorney's fees to [Wife's ] attorneys?

### III.

As we very recently stated,

when reviewing a trial court's finding of criminal contempt,

> the appellate courts do not review the evidence in a light favorable to the convicted person; nevertheless, it is our duty to reverse criminal contempt convictions when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt. On appeal, the convicted person bears the burden of overcoming the presumption of guilt.
>
> In determining the sufficiency of the convicting evidence, the appellate court does not re-weigh or re-evaluate the evidence. Nor may we substitute inferences for those drawn by the trier of fact

from circumstantial evidence. To the contrary, a court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. Therefore, this court will not disturb a verdict of guilty due to the sufficiency of the evidence unless the relevant facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt.

*Furlong v. Furlong*, 370 S.W.3d 329, 338 (Tenn. Ct. App. 2011)(*quoting* **Ross v. Ross**, No. M2008-00594-COA-R3-CV, 2008 WL 5191329 at *6 (Tenn. Ct. App. M.S., filed Dec. 10, 2008)). Questions of law are reviewed de novo on appeal with no presumption of correctness. **Keyt v. Keyt**, 244 S.W.3d 321, 327 (Tenn. 2007). Awards of attorney's fees are largely within the discretion of the trial court and will be disturbed on appeal only when a clear abuse of discretion is shown. **Id**.

IV.

A.

Husband first argues that all of the orders of the court that predate the Final Order and Judgment entered on October 2, 2008, including the orders holding him in contempt and imposing jail sentences, are rendered null and void by the following language in the Judgment: "All temporary and interim orders of the Court and temporary restraining orders, statutory and otherwise, are hereby vacated, set aside and held for naught." Husband relies upon principles of res judicata, collateral estoppel, and law of the case. *See* **State v. Thompson**, 285 S.W.3d 840, 848 (Tenn. 2009)(res judicata and collateral estoppel); **Memphis Publ'g Co. v. Tennessee Petroleum Underground Storage Tank Bd.**, 975 S.W.2d 303, 306 (Tenn.1998)(law of the case). In general terms, all of these principles stand for the proposition that issues of fact and law, once determined in a final judgment, are binding on the parties in the future. **Id**. Wife points out, however, that Husband does not explain how or why the previous orders finding him in contempt are in any way "temporary" or "interim." The case law on the subject is to the effect that any order that imposes punishment upon a

petition for contempt is a final appealable order in its own right, even though the proceedings in which the contempt arose are ongoing. ***Bailey v. Crum***, 183 S.W.3d 383, 387 (Tenn. Ct. App. 2005). *See also* ***Overnite Transp. Co. v. Teamsters Local Union No. 480***, 172 S.W.3d 507, 510 (Tenn. 2005)(an appeal lies from an order refusing to hold an alleged contemnor in civil contempt). The nature and effect of orders finding contemptuous behavior and assessing punishment for same is such as to fall outside of the characterization of "temporary" or "interim."

B.

Husband next argues that Wife "waived" the three ten-day sentences that were first imposed and suspended in the November 2004 Order, and then ordered into execution by the October 2005 Order with the proviso that "the sentences that are ordered into execution, or any part thereof, may be waived by [Wife] . . . ." Husband argues that Wife admitted waiving the sentences. In reality, what Wife admitted was that she "consented to the suspension of the jail sentences."

"[A] waiver is a voluntary relinquishment by a party of a known right." ***Gaston v. Tennessee Farmers Mut. Ins. Co.***, 120 S.W.3d 815, 819 (Tenn. 2003) (*quoting* ***Chattem, Inc. v. Provident Life & Accident Ins. Co.***, 676 S.W.2d 953, 955 (Tenn.1984)). The burden of proving waiver rests with the person claiming waiver. ***Id***. In addition to interpreting Wife's actions, this case requires us to interpret the meaning of the October 2005 order:

> . . . In construing an order, the primary goal is the same as with any writing, *i.e.*, to ascertain the intended effect looking first to the language of the document. ***Livingston v. Livingston***, 429 S.W.2d 452, 456 (Tenn. Ct. App. 1967). The "general rule" in construing orders and judgments
>
>> is that a judgment should be so construed as to give effect to every part of it and where there are two possible interpretations that one will be adopted which is in harmony with the entire record, and is such as ought to have been rendered and is such as is within the jurisdictional power of the court. Moreover, the judgment will be read in the light of the pleadings and the other parts of the record.

[***Lamar Advertising Co. v. By-Pass Partners***, 313 S.W.3d 779, 786 (Tenn. Ct. App. 2009)](*quoting* ***John Barb, Inc. v. Underwriters at Lloyds of London***, 653 S.W.2d 422, 423 (Tenn. Ct. App. 1983) (internal citation omitted)(quoting ***Grant v. Davis***, 8 Tenn. C.C.A. 315, 319 (Civ. App.1918)). Further, when the order expressly incorporates a transcribed ruling from the bench, the transcription of the oral pronouncement is given the legal effect of being part of the order. *See* ***Grand Valley Lakes Property Owners Ass'n v. Burrow***, No. W2011-00573-COA-R3-CV, 2011 WL 6916477 at *6 (Tenn. Ct. App. W.S., filed Dec. 28, 2011)(courts do not necessarily review oral announcements unless transcribed and incorporated into decree).

***Gentry v. Bailey***, E2011-01278-COA-R9-CV, 2012 WL 605546 at *5 (Tenn. Ct. App. E.S., filed Feb. 27, 2012).

The October 2005 Order expressly incorporated the court's findings that were transcribed as announced on July 29, 2005. With regard to the 30 days of jail time imposed by the November 2004 Order, the court found that, despite the suspension of that sentence made in the hope that Husband would comply, Husband had "blatantly and intentionally" violated the order. The court therefore "unsuspended" the sentence, but stated that the "sentence may be suspended . . . upon the consent of [Wife] . . ." When asked for clarification, the court stated: "On the 30, she can agree that it is suspended again." The reason for placing the power in the Wife was to encourage cooperation between the parties. Based on our review of the record, it is beyond doubt that the court intended to give Wife the power to suspend the sentence rather than waive it altogether and that is what Wife admitted doing. We find no merit in Husband's argument that Wife waived the sentence imposed in the November 2004 Order.

## C.

Husband next argues that the trial court acted too late in "unsuspending" the sentences. He relies on Tenn. Code Ann. § 40-35-310(a)(2010), which states:

The trial judge shall possess the power, at any time within the maximum time that was directed and ordered by the court for the suspension, after proceeding as provided in § 40-35-311, to revoke and annul the suspension; and in such cases the trial judge may order the original judgment so rendered to be in full force and effect from the date of the revocation of the

-10-

suspension, and that it be executed accordingly; provided, that in any case of revocation of suspension on account of conduct by the defendant that has resulted in a judgment of conviction against the defendant during the defendant's period of probation, the trial judge may order that the term of imprisonment imposed by the original judgment be served consecutively to any sentence that was imposed upon the conviction.

The statute has been interpreted to deprive a court of "jurisdiction [to revoke a suspension] beyond the maximum term to which defendant could have been sentenced." **State v. Broome**, C.C.A No. 1044, 1988 WL 24720 at *1 (Tenn. Crim. App. E.S., filed Mar. 16, 1988); *see* **McGuire v. State**, 292 S.W.2d 190, 192 (Tenn. 1956). Husband argues that the maximum sentence is either ten days or six months[1]; therefore, according to him, the revocation of suspension which came several years after either the November 2004 Order or the October 2005 Order came too late.

This court considered and rejected an almost identical argument in **Sloan v. Poff**, No. M2009-01839-COA-R3-JV, 2011 WL 1166845 at *10 (Tenn. Ct. App. M.S., filed March 29, 2011). In **Sloan**, the trial court found the mother of a minor child in criminal contempt and sentenced her to ten days confinement but suspended the sentence "for so long as [she] continued to comply with orders." *Id*. at *1. On appeal, the mother argued that Tenn. Code Ann. § 40-35-303(c)(1) allows suspension of a sentence only "up to and including the statutory maximum time for the class of the conviction offense." *Id*. at *8. Further, she argued "that since the criminal contempt statute prevents a court from incarcerating an individual for more than ten days, *see* Tenn. Code Ann. § 29-9-103, section 40-35-303 (c)(1) precludes a court from suspending the sentence for longer than ten days because ten days is the "statutory maximum time for the class of the conviction offense." *Id*. We held as follows:

> Mother's argument would be persuasive if criminal contempt
> constituted a violation of the criminal law and if a suspension of
> a criminal contempt sentence constituted "probation" as that
> term is used in Tenn. Code Ann. § 40–35–303(c)(1). However,
> criminal contempt is not considered a violation of the criminal

---

[1]Husband's time parameters are from Tenn. Code Ann. § 36-5-104(a) (2010) which limits the sentence for failure to comply with a child support order to six months, and Tenn. Code Ann. § 29-9-103(2012) which limits the confinement for a single act of criminal contempt to ten days in jail. We need not decide which, if either, is the correct maximum since we dispose of the issue on other grounds.

law, and a suspension of a criminal contempt sentence does not constitute probation. As a result, we conclude the Juvenile Court did not err when it suspended Mother's ten-day sentence to the Davidson County workhouse.

This court has addressed the issue of criminal contempt on numerous occasions and has concluded that a criminal contempt proceeding is *sui generis*, or a class unto itself. The Tennessee Supreme Court described criminal contempt proceedings as "sui generis—neither a civil action nor a criminal prosecution as ordinarily understood, nor a criminal prosecution within the Sixth Amendment of the United States Constitution." ***Bowdon v. Bowdon***, 198 Tenn. 143, 278 S.W.2d 670, 672 (Tenn. 1955). . . . .

Unlike a typical criminal prosecution, which stands or falls on its own set of circumstances, a criminal contempt proceeding is necessarily based on a preexisting court order and is an offense against the court itself. *See **Doe v. Board of Professional Responsibility of the Supreme Court of Tennessee***, 104 S.W.3d 465, 474 (Tenn. 2003) (contempt proceeding is *sui generis* and is incidental to the case from which it arises). . . .

Criminal contempt statutes are not like other criminal statutes that prohibit certain activities, such as driving without a license or selling alcohol to a minor. Rather, they are "punitive in character, and their primary purpose is to vindicate the court's authority." [ ***Thigpen v. Thigpen,*** 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993] (*citing **Gunn v. Souther[n] Bell Tel. & Tel. Co.,*** 201 Tenn. 38, 296 S.W.2d 843, 844 (1956) and ***Garrett v. Forest Lawn Memorial Gardens***, 588 S.W.2d 309, 315 (Tenn. Ct. App. 1979)); *see **Long***, 221 S.W.3d at 12-13 (criminal contempt sanctions imposed simply as punishment).

It is not unusual for a court that has found an individual in criminal contempt for violating its order to suspend a sentence imposed as a sanction for that contempt. *See **Cansler v. Cansler***, 2010 WL 342652, at * 10 (Tenn. Ct. App. 2010) (holding § 29-9-103 does not mandate a sentence be imposed, and trial court can suspend any sentence it gives); ***Thigpen***, 874

S.W.3d at 54 (trial court should have suspended all but one day of sentence imposed for criminal contempt).

Tennessee Code Annotated § 40-28-102(5) defines "probation" as:

> the release by a court of a person found guilty of a crime, upon verdict or plea, without imprisonment subject to conditions imposed by the court and subject to the supervision of the probation service....

> *When the Juvenile Court found Mother in criminal contempt, it did not find Mother guilty of a crime. Rather, it found Mother had willfully violated its orders* dated January 7, 2009 and July 30, 2009. We conclude Tennessee Code Annotated § 40-35-303(c)(1) does not come into play when criminal contempt is at issue and, therefore, it does not affect the court's ability to suspend its ten-day sentence imposed pursuant to Tenn. Code Ann. § 29-9-103.

> For all of these reasons, we affirm the trial court's decision to suspend Mother's ten-day incarceration in the Davidson County workhouse for so long as she complies with the court's orders during the pendency of this case.

***Sloan***, at *9 -10 (Emphasis added.) The statute Husband relies on is, as was the statute cited in ***Sloan***, part of the Tennessee Criminal Sentencing Reform Act of 1989, Tenn. Code Ann. § 40-35-101 et seq. (2010). We agree with the reasoning of ***Sloan*** and find that reasoning applicable to the present facts. Therefore, we hold that the trial court acted within its jurisdiction in revoking the prior suspension of Husband's sentences.

## D.

Husband next argues that the trial court erred in finding him in criminal contempt without requiring proof beyond a reasonable doubt. Husband's argument is based upon the language in the court's order reciting that there is "clear and convincing evidence" that Husband was able to pay the obligation but willfully refused to do it. Husband is correct that persons charged with criminal contempt are presumed innocent and should not be found guilty absent proof of guilt beyond a reasonable doubt. ***Storey v. Storey***, 835 S.W.2d 593,

599 (Tenn. Ct. App. 1992). Husband seems to assume that since the court used the incorrect terminology, the proof is insufficient as a matter of law. He does not cite us to any authority for the proposition that the trial court's mention of a lesser burden of proof precludes a finding on review that the record shows proof of guilt beyond a reasonable doubt. In fact, Husband does not even argue that should be the law. In our independent research we have found no such authority. Accordingly, we think it proper to follow the path we charted in *Fortson v. Fortson*, No. 03A01-9611-CV-00363, 1997 WL 529001 at * 4-5 (Tenn. Ct. App. E.S., filed Aug. 28, 1997), of reviewing the record to see if it contains proof of guilt beyond a reasonable doubt.

This case, much like *Fortson*, turns on credibility. *Id*. at *4. A trial court's findings which turn on credibility will not be reversed absent "clear, concrete and convincing evidence to the contrary." *Id*. (*quoting Tennessee Valley Kaolin v. Perry*, 526 S.W.2d 488, 490 (Tenn. Ct. App. 1974). The trial court in the present case specifically found Husband's "assertions he could not pay child support without credibility." Further, the court found that "[Husband] simply chose what he wanted to pay and support was not what he wanted to pay . . . ." The record demonstrates that while Husband was not paying support as ordered in the approximate amount of $2,000 per month, he was finding the ability to spend money on his new family, including country club dues, in the approximate amount of $12,000 per month. There is no evidence in this record to even suggest the trial court misjudged Husband's credibility. In short, as in *Fortson*, "[w]e find in the record proof of [Husband's violations of the court's prior orders] beyond a reasonable doubt." *Id*. at *5.

E.

Husband's final argument against the judgment of contempt is that "the Trial Court made no finding as to the amount of the child support arrearage required of [him] which he might pay to purge himself of the contempt." He further asserts that, "[i]f the contempt sanctions are found to be in the nature of civil contempt sanctions, they were improper because the Trial Court provided no method by which Mr. Coffey could have purged himself of the contempt." We construe Husband's argument, as asserted in the alternative, as made by him in contemplation that we might affirm the court's judgment on the theory that it is proper as a finding of civil contempt. We have not taken that route. It is clear that while a contemnor held in civil contempt generally can purge himself of contempt by belatedly complying with the court's order, the purpose of criminal contempt is to vindicate the court through punishment for willful disobedience to its orders. *See Agee v. Chapman*, 922 S.W.2d 516, 519 (Tenn. Ct. App. 1995). A party "who is in criminal contempt cannot be freed by eventual compliance . . . ." *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000). Thus, we hold that the trial court did not err in finding Husband in contempt in the absence of a specific finding as to the amount he owed. If the amount mattered, and if Husband had a

-14-

sudden change of heart and wanted to pay his obligations, we believe there are enough specific orders in the record on support and alimony to allow him to calculate what he owed.

F.

The final argument we address is Husband's contention that the trial court abused its discretion in awarding Wife $10,000 in attorney's fees for prosecuting her petition for criminal contempt. As a general rule, attorney's fees are not allowed to the prevailing party on a criminal contempt petition because the award of fees is viewed as punishment in excess of the $50 fine and 10 days in jail allowed under Tenn. Code Ann. § 29-9-103 (2012). ***Butler v. Butler***, No. 02A01-9409-CH-00218, 1995 WL 695123 at *2 (Tenn. Ct. App. W.S., filed Nov. 21 1995). It is permissible, however, to award attorney's fees to the prevailing party where the subject of the contempt is a failure to pay child support. ***Id***. at *2 n1.

Husband concedes that it is his burden on appeal to demonstrate an abuse of discretion. He also concedes that a court can determine a reasonable fee based on its experience in the case without always conducting an evidentiary hearing. However, he argues that the court in the present case was a "little too fast on the trigger." The trial court's order holding Husband in contempt directed Wife to submit "an attorney's fee affidavit and an Order awarding [her] attorney's fee with the amount of the award in blank." In the late afternoon of February 14, 2012, Wife's counsel filed affidavits claiming fees in the amount of $18,987.25 and expenses in the amount of $1,714.31. On February 15, 2012 the court entered an order awarding $10,000 in "attorney's fees and costs" to Wife. The order was file-stamped at "AM 9:29." Husband asserts that he had no opportunity to respond to the amount claimed by Wife. He also asserts that it is highly unlikely that all of these charges were related to child support since there were only two witnesses of substance at the contempt hearing and only 90 pages of transcribed testimony.

Wife asserts, in a footnote, that the issue of the amount of fees awarded is not properly before the court because the notice of appeal was filed concerning "the final judgment entered in this case on January 10, 2012" but the order setting the amount of the fees was not entered until later, in February. We disagree. Because fees were awarded in the January 2012 Order, but not set until the February 2012 Order, the notice of appeal filed before the February 2012 Order was a "premature" notice of appeal as that term is used in Tenn. R. App. P. 4 (d), which states:

> A prematurely filed notice of appeal shall be treated as filed after the entry of the judgment from which the appeal is taken and on the day thereof.

*See **Roberts v. Roberts***, No. E2009-02350-COA-R3-CV, 2010 WL 4865441 at *8 (Tenn. Ct. App. E.S., filed Nov. 29, 2010)(the rule is construed broadly to encompass any judgment that becomes final after the notice of appeal). Thus, the issue is properly before this Court.

Wife argues that, in light of the broad discretion given to trial courts in awarding attorney's fees, it was incumbent on Husband to insist upon a hearing, and to present proof that the amount requested or awarded was unreasonable. *See **Moran v. Willensky***, 339 S.W.3d 651, 664 (Tenn. Ct. App. 2010). ***Moran*** supports Wife's assertion as a general rule, but does not sustain the award in this particular case. The record demonstrates that the order was entered before Husband's attorney could have been expected to have even made a telephone call, much less present a meaningful response. Husband had no obligation in this matter tried without a jury to file a motion for new trial or any other post-judgment motion. Tenn. R. App. P. 3(e). Husband should have been provided at least some window of opportunity to show that some portion of the fees claimed did not relate (1) to the prosecution of the contempt petition or (2) to child support. According to ***Butler***, the fees awarded must relate to both, otherwise, they are not authorized by law. We hold that the trial court abused its discretion in awarding Wife $10,000 in attorney's fees without allowing Husband an opportunity to make a showing that the fees were not authorized by law or were not reasonable. On remand, the trial court is directed to give Husband that opportunity.

V.

The judgment of the trial court is affirmed in part and vacated in part. That part of the judgment holding Husband in criminal contempt and sentencing him to serve a total of 55 days in jail, based in large part upon the revoking of the previously-suspended sentences, is affirmed. That part of the judgment awarding Wife $10,000 in attorney's fees is vacated. Costs on appeal are taxed to Husband. This case is remanded, pursuant to applicable law, for a determination of a reasonable attorney's fee to Wife after giving Husband an opportunity to challenge the fee claimed.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE